[No. D056528. Fourth Dist., Div. One. Apr. 29, 2011.]

WOLFGANG HAHN et al., Plaintiffs and Appellants, v.
ALEJANDRO DIAZ-BARBA et al., Defendants and Respondents.

COUNSEL

Baker & McKenzie, Ali M. M. Mojdehi and Janet D. Gertz for Plaintiffs and Appellants.

Sandler, Lasry, Laube, Byer & Valdez, Edward I. Silverman; Guevara, Phippard & James and William J. Phippard for Defendant and Respondent Alejandro Diaz-Barba.

Mazzarella & Caldarelli, William J. Caldarelli; and D. Anthony Gaston for Defendant and Respondent Martha Barba De La Torre.

Seltzer Caplan McMahon Vitek, Gregory A. Vega and David M. Greeley for Defendants and Respondents Michael Kocherga, Nicholas Kocherga and Alexander Kocherga.

OPINION

**McCONNELL, P. J.**—The issue in this appeal is whether the trial court erred under the forum non conveniens doctrine by staying an action against residents of California for tortious interference with contract and other business torts for the sale of an interest in a Mexican business. Plaintiffs contend defendants did not meet their burden of proving Mexico is a suitable alternative forum, or that on balance the private and public interests favor Mexico as the more convenient forum. We affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Parties*

Plaintiffs are Wolfgang Hahn and Nikita II, S.A. (Nikita). Hahn is a German citizen who resides in Switzerland and Mexico. He owns Nikita, a Luxembourg corporation, which is the majority owner of Impulsora de Chamela, SA de CV (Impulsora), a Mexican company with property in Chamela, State of Jalisco, Mexico. Hahn intended to develop the property into an exclusive resort called La Tambora.

Defendants are Alejandro Diaz-Barba (Diaz); his mother, Martha Barba De La Torre (Barba); and their friends, brothers Michael Kocherga, Nicholas Kocherga and Alexander Kocherga (collectively, the Kochergas). Diaz and Barba are Mexican citizens who reside in San Diego County and do business here. Two of the Kochergas were born in Mexico and one of them was born in Spain. They all reside in San Diego County.

B. *Underlying Bankruptcy Proceeding*

A brief summary of a United States bankruptcy proceeding involving Hahn, Diaz and Barba is required to contextualize the facts of the instant action.

In 2004 Diaz and Barba purchased a property in Mexico called Villa Vista Hermosa. Villa Vista Hermosa is the childhood home of the Kochergas, along with a fourth brother, Eugenio Kocherga,[1] who is not a defendant here. He owns a minority interest in Impulsora, whose property surrounds Villa Vista Hermosa. Diaz and Barba frequently visited the Kocherga family at Villa Vista Hermosa.

Villa Vista Hermosa had been owned by Jerry and Donna Icenhower, who in 2003 filed for bankruptcy protection under chapter 7. During the proceeding, the Icenhowers purported to transfer the property to Howell & Gardner Investors, Inc. (H&G), a sham company whose only purpose was to hold their assets. Diaz and Barba purchased the property from H&G.

In February 2005 the bankruptcy trustee added Diaz and Barba as defendants in a fraudulent conveyance action he had filed against the Icenhowers and H&G. The trustee also filed an action to determine H&G was the Icenhowers' alter ego. Subsequently, a Hahn entity, Kismet Acquisition, LLC (Kismet), negotiated with the trustee to purchase the bankruptcy estate's assets, including an assignment of the two adversarial proceedings.[2] Kismet's interest was based on its purchase of the claims of a family trust that had a claim against the bankruptcy estate. The trust had sold Villa Vista Hermosa to the Icenhowers, but problems arose. The trust sued the Icenhowers in federal court, and the court ordered them to pay damages or reconvey the property to the trust.

In June 2008 the bankruptcy court found H&G was the alter ego of Jerry Icenhower, and the Icenhowers' transfer of Villa Vista Hermosa to H&G was fraudulent. The court found the property was an asset of the bankruptcy estate, and Diaz and Barba, who had knowledge of the bankruptcy proceeding, lacked good faith and "exercised insufficient due diligence in determining whether the purchase from H&G was legally sufficient and permitted." The court ordered that Diaz and Barba return Villa Vista Hermosa, or its value, to the bankruptcy estate.

---

[1] When referring to the Kocherga brothers individually, we use their first and last names to avoid confusion.

[2] We grant defendants' motion to strike the portion of plaintiffs' corrected reply brief that states Kismet is a limited liability company under the laws of California. In a notice of errata, plaintiffs concede this is incorrect. We deny defendants' motion to strike the notice of errata, insofar as it claims California is Kismet's principal place of business, and accompanying request for judicial notice. We also deny plaintiffs' responsive request for judicial notice dated April 1, 2011.

## C. *Complaint Allegations*

In July 2009 plaintiffs filed a first amended complaint (complaint) against defendants for tortious interference with contract, and intentional and negligent interference with prospective economic advantage. The action arises from defendants' conduct during the pendency of the fraudulent transfer action against Diaz and Barba in bankruptcy court.

The complaint alleges as follows: Hahn sought to purchase Eugenio Kocherga's minority interest in Impulsora to attract investors in La Tambora. In June 2006 negotiations began between the two men. In February 2007 they reached an oral agreement for Eugenio Kocherga's sale of his shares for $2.5 million. On February 6, 2007, the deal was memorialized in a letter agreement signed by Eugenio Kocherga. Diaz, Barba, and the Kochergas were aware of the letter agreement.

Diaz and Barba asserted pressure on Hahn to dismiss them from the fraud action in the bankruptcy proceeding. Having no success, they enlisted the Kochergas to assist them. They knew the Kochergas had a "deep emotional attachment" to Villa Vista Hermosa, and they promised the Kochergas the opportunity to purchase an interest in the property, contingent on their success in getting Hahn to dismiss them from the fraud action. Defendants attempted to sabotage the negotiations between Hahn and Eugenio Kocherga, and after the letter agreement was signed, the Kochergas influenced Eugenio Kocherga not to honor it. Eugenio Kocherga reneged on the deal, after which he used his minority interest in Impulsora to harass Hahn and derail the La Tambora project. Diaz admitted in the bankruptcy proceeding that he offered to sell the Kochergas a share of Villa Vista Hermosa on the condition they convince Hahn to dismiss the fraud action against Diaz and Barba. Further, Eugenio Kocherga admitted he reneged on the deal because Hahn refused to cooperate.

The breach of the letter agreement forced plaintiffs to reevaluate the feasibility of La Tambora because they lost financing. Plaintiffs had to put the project on hold, which caused a substantial increase in carrying costs and expenses, and deprived them of anticipated operating income and profits. Further, defendants' conduct harmed plaintiffs' business reputation and destroyed goodwill.

## D. *Forum Non Conveniens Motions*

Diaz and Barba filed separate motions for the dismissal or stay of the action on the ground of forum non conveniens. They joined each others' motions, and the Kochergas joined Diaz's and Barba's motions. The defendants stipulated to submit to the jurisdiction of the Mexican courts, and to waive the applicable statute of limitations under Mexican law.

Additionally, Barba and Diaz submitted declarations by two Mexican attorneys stating the courts of Mexico are available and appropriate as an alternative forum. In opposition, plaintiffs presented no countervailing evidence. Rather, they challenged the sufficiency of the evidence to meet defendants' burden of proving Mexico is a suitable alternative forum, and on balance the private and public interests show Mexico is the more convenient forum. Citing federal authority, plaintiffs argued Mexico is not suitable because it does not recognize a cause of action for tortious interference with contract. (See *Coufal Abogados v. AT&T, Inc.* (9th Cir. 2000) 223 F.3d 932, 935.)

In reply, Diaz submitted a more indepth declaration by another Mexican attorney, Alfredo Andere-Mendiolea (Andere). It explained that given defendants' stipulations, the courts of Mexico can exercise personal jurisdiction over them and the statute of limitations poses no impediment. Further, while Mexico does not recognize a cause of action for tortious interference with contract, it has subject matter jurisdiction over the dispute, and broad legal remedies for torts under the "legal doctrine of '*acto ilicito*,' " which "provides that any person who acts in a manner which is against the public interest or good customs and which causes damage to another person, is liable to (must indemnify) the person suffering the harm."

Plaintiffs filed a written request to strike the Andere declaration on the ground defendants should have submitted it with their moving papers, and thus it was untimely. Plaintiffs argued they were prejudiced because they lacked the opportunity to respond to the Andere declaration with countervailing evidence.

The court issued a tentative ruling granting defendants' motions insofar as they requested a stay. The ruling does not address plaintiffs' request to strike the Andere declaration. After a hearing, the court took the matter under submission. On October 13, 2008, the court issued an order affirming the tentative ruling.

E. *Postruling Proceedings*

Plaintiffs moved for reconsideration of the court's order under Code of Civil Procedure section 1008, but they did not present any evidence of new or different facts, circumstances or law, as required. (Code Civ. Proc., § 1008, subd. (a).) The motion stated plaintiffs "intend to submit evidence on Mexican law in connection with requisite jurisdictional issues," to rebut "the late-filed evidence that was first submitted by defendants' [*sic*] with their reply briefs."

Plaintiffs later filed an amended notice of motion. In support, plaintiffs submitted the declaration of a Mexican attorney, Oscar Tellez-Ulloa (Tellez),

on Mexican law. They also requested that the court take judicial notice of provisions of Mexican law. They argued that defendants' presentation of the Andere declaration with their reply created an irregularity in the proceedings.

Defendants opposed the motion on several grounds, including that it was untimely. While the motion was pending, plaintiffs filed their notice of appeal, which rendered the motion moot.

## DISCUSSION[3]

### I

### *Legal Principles*

■ "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14] (*Stangvik*).)[4] The forum non conveniens doctrine was codified in 1969. (Code Civ. Proc., § 410.30 (section 410.30).)[5]

■ The defendant has the burden of proof in a forum non conveniens motion. (*Stangvik, supra,* 54 Cal.3d at p. 751.) In analyzing such a motion, California courts follow the procedure outlined in *Stangvik*. The first step is determining "whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California." (*Ibid.*)

---

[3] Plaintiffs' opening brief cursorily asserts in its statement of the case that Barba waived her right to move for a stay on the ground of forum non conveniens by not bringing the motion at the same time she moved to strike the original complaint. (See Code Civ. Proc., § 418.10, subd. (e)(3).) The brief, however, does not list this issue as an issue on appeal, and the discussion portion of the brief does not address it. Thus, plaintiffs have abandoned the matter. Their attempt to address the issue in their reply brief is insufficient. (*California Recreation Industries v. Kierstead* (1988) 199 Cal.App.3d 203, 205, fn. 1 [244 Cal.Rptr. 632].)

[4] A "transitory action" is an "action that can be brought in any venue where the defendant can be personally served with process." (Black's Law Dict. (8th ed. 2004) p. 34.)

[5] Section 410.30, subdivision (a) provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." The Judicial Council comments to section 410.30 state in part: "Under the doctrine of inconvenient forum, a court, even though it has jurisdiction, will not entertain the suit if it believes that the forum of filing is a seriously inconvenient form for the trial of the action. But in such instances a more appropriate forum must be available to the plaintiff." (Judicial Council of Cal. com., reprinted at 14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 410.30, p. 486.)

 The threshold issue of whether an alternative forum is suitable is nondiscretionary, subject to de novo review. (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436 [104 Cal.Rptr.2d 670]; *Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036–1037 [68 Cal.Rptr.2d 427] (*Chong*).) "The threshold issue of suitability of the alternative forum is . . . determined by a two-pronged test: There must be jurisdiction over the defendant and the assurance that the action will not be barred by a statute of limitations." (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132–133 [6 Cal.Rptr.2d 38] (*Shiley*).) "[A] forum is suitable where an action 'can be brought,' although not necessarily won." (*Ibid.*; *Chong*, at p. 1037.)

 The secondary balancing inquiry is subject to an abuse of discretion standard of review under which we give the court's determination substantial deference. (*Stangvik, supra*, 54 Cal.3d at p. 751; *Chong, supra*, 58 Cal.App.4th at p. 1037.) "The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik, supra*, at p. 751.)

These factors "must be applied flexibly, without giving undue emphasis to any one element. A court should not decide that there are circumstances in which the doctrine will always apply or never apply. Otherwise, the flexibility of the doctrine would be threatened, and its application would be based on identification of a single factor rather than the balancing of several." (*Stangvik, supra*, 54 Cal.3d at p. 753.)

## II

### *The Court Properly Found Mexico Provides a Suitable Alternative Forum*

#### A

Preliminarily, we dispose of plaintiffs' contention reversal is required because the court's order does not sufficiently explain its reasoning on the issue of suitability. Plaintiffs cite an unpublished federal case, *Synygy, Inc. v. ZS Associates, Inc.* (3d Cir., June 1, 2009, No. 08-2355) 2009 U.S.App. Lexis 11777, in which the applicable law required the court's findings on a forum non conveniens motion to be " 'sufficiently detailed and supported by the

record.' " (*Id.* at p. *4.) "But in California '. . . there is no requirement that the trial court make any express ruling on a motion to stay/dismiss.' " (*Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 [82 Cal.Rptr.2d 202].) On such a motion, "[i]t is axiomatic [that] we review judicial action and not judicial reasoning." (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1676 [16 Cal.Rptr.2d 417].)

### B

On the merits, plaintiffs assert that as part of defendants' burden on the threshold suitability issue, they were required to educate the court on the subject matter jurisdiction of Mexican courts, and because they submitted no evidence that the courts there would have subject matter jurisdiction over a dispute concerning tortious conduct committed in California, they failed to satisfy the burden. We disagree.

■ The term "subject matter jurisdiction" "is often defined as 'the power to hear and determine' the cause." (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 1, p. 575.) The term "is also used to describe the range of power to apply remedies in various fields of substantive law." (*Id.*, § 2, p. 576.) Subject matter jurisdiction cannot be conferred by consent, waiver or estoppel. (*Id.*, § 13, p. 585.)

■ Plaintiffs rely on language from *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 255, footnote 22 [70 L.Ed.2d 419, 102 S.Ct. 252] (*Piper*). In *Piper*, the United States Supreme Court held that in ruling on a forum non conveniens motion, a court should ordinarily not give weight to comparative law questions, or the doctrine "would become virtually useless." (*Id.* at p. 250.) The court explained that otherwise "[c]hoice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions." (*Id.* at p. 251.) The court added, however, that an unfavorable change in the law could be given substantial weight "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." (*Id.* at p. 254.) The court elaborated that "[i]n rare circumstances, . . . where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum *does not permit litigation of the subject matter of the dispute.*" (*Id.* at p. 254, fn. 22, italics added.) Plaintiffs assert the italicized language means that part of the moving party's burden on the threshold suitability question requires a showing that the alternative forum would have subject matter jurisdiction over the dispute.

This language from *Piper*, however, cannot be read in isolation. It pertains to the rare "no remedy at all" exception. In California, the "no remedy at all"

exception has been construed to apply only narrowly, "such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law." (*Shiley, supra,* 4 Cal.App.4th at pp. 133–134, citing *Piper, supra,* 454 U.S. at p. 254, fn. 22.) *Shiley* points out that *Piper* cites *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.* (D.Del. 1978) 78 F.R.D. 445 (*Phoenix*), as a case involving an alternative forum that provided no remedy at all. (*Shiley,* at p. 134, fn. 4, citing *Piper,* at p. 254, fn. 22.) In *Phoenix,* the court determined Ecuador was clearly unsuitable because it was controlled by a military government with power over the judiciary. (*Phoenix,* at p. 454; see also *Canadian Overseas Ores Ltd. v. Compania de Acero Del Pacifico S.A.* (S.D.N.Y. 1982) 528 F.Supp. 1337, 1342 [Chile clearly not a suitable forum because its judiciary was subject to the influence of the ruling military junta].)

*Shiley* explains: "If, as urged by plaintiffs, the rare 'no remedy at all' exception were broadened, it would undermine important public interests, particularly the interest in avoiding congesting California courts and overburdening California taxpayers. The law does not require that California courts become the depository for nonresident plaintiffs' cases involving causes of action *which are not recognized or would not be successful* in those plaintiffs' home states. Having been assured of jurisdiction over petitioners and that there will be no statute of limitations bar, plaintiffs' remedy is to pursue their causes of action in their home forums and to persuade the trial or appellate courts there to recognize their claims. We cannot be blind to the fact that . . . the law in plaintiffs' home jurisdictions is subject to judicial and legislative change." (*Shiley, supra,* 4 Cal.App.4th at p. 134, italics added; see *Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696–697 [91 Cal.Rptr.3d 178] (*Guimei*); *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 711 [46 Cal.Rptr.2d 888] ["The fact that a plaintiff will be disadvantaged by the law of [the alternative] jurisdiction, or that the plaintiff will probably or even certainly lose, does not render the forum 'unsuitable' . . . ."].)

Plaintiffs do not suggest Mexico lacks an independent judiciary or American concepts of due process and fairness. Indeed, numerous courts in other jurisdictions have concluded the Mexican judicial system provides a suitable alternative forum. (See, e.g., *Dtex, LLC v. BBVA Bancomer, S.A.* (S.D.Tex. 2007) 512 F.Supp.2d 1012, 1022, affd. and adopted (5th Cir. 2007) 508 F.3d 785 [tortious interference with contract, interference with prospective contractual relations and conversion]; *Loya v. Starwood Hotels & Resorts Worldwide, Inc.* (9th Cir. 2009) 583 F.3d 656 [breach of contract and wrongful death]; *Gonzalez v. Chrysler Corp.* (5th Cir. 2002) 301 F.3d 377 [Mexico adequate even though it did not recognize strict product liability actions and capped wrongful death damages at $2,500]; *Navarrete De Pedrero v. Schweizer Aircraft Corp.* (W.D.N.Y. 2009) 635 F.Supp.2d 251 [products liability and negligence]; *Seguros Comercial Americas S.A.*

*De C.V. v. American President Lines, Ltd.* (S.D.Tex. 1996) 933 F.Supp. 1301 [cargo carriage litigation]; *Perforaciones Maritimas Mexicanas S.A. de C.V. v. Seacor Holdings, Inc.* (S.D.Tex. 2006) 443 F.Supp.2d 825, 834 ["Plaintiff has not presented, and the Court is not aware of, any obstacles to justice within the Mexican court system."].)

■ It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations. Our courts rely on the Judicial Council comment to section 410.30, which declares that a forum is suitable if the defendant can be subjected to the jurisdiction of the courts in the alternative forum and the statute of limitations poses no bar. (Judicial Council of Cal. com., reprinted at 14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 410.30, p. 488; *Stangvik, supra,* 54 Cal.3d at p. 752; *Shiley, supra,* 4 Cal.App.4th at p. 131; *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464 [51 Cal.Rptr.3d 301].)

California courts routinely conclude alternative forums are suitable when the moving parties make the same showing defendants made here. (See, e.g., *Roulier v. Cannondale* (2002) 101 Cal.App.4th 1180, 1184, 1186–1187 [124 Cal.Rptr.2d 877] [suitable alternative forum existed because defendant offered to stipulate to jurisdiction in Switzerland and to waive applicable statutes of limitations]; *Campbell v. Parker-Hannifin Corp., supra,* 69 Cal.App.4th at p. 1540 [order staying Cal. action based on forum non conveniens contained stipulations that defendants submit to personal jurisdiction in Australia and applicable Australian statute of limitations be tolled]; *Chong, supra,* 58 Cal.App.4th at pp. 1038–1039 [both defendants consented to jurisdiction in Hong Kong and to tolling of any applicable statutes of limitations during pendency of Cal. action if it is stayed]; *Shiley, supra,* 4 Cal.App.4th at pp. 130, 133 [defendants offered to stipulate to submit to jurisdiction of alternative sister state forums and to tolling of any applicable statutes of limitations during the pendency of Cal. action if it was stayed]; *Stangvik, supra,* 54 Cal.3d at p. 752 ["Defendants stipulated that they would submit to jurisdiction in Sweden or Norway, respectively, as well as to the tolling of the statute of limitations during the pendency of the [stayed] actions in California. Thus, the courts of Sweden and Norway present suitable forums for trial of the actions."]; *Boaz v. Boyle & Co., supra,* 40 Cal.App.4th at p. 711 ["But a forum is suitable if the defendant is amenable to process there, there is no procedural bar to the ability of courts of the foreign jurisdiction to reach the issues raised on their merits (or, if there is, the advantage of the bar—

typically, the statute of limitations—is waived by defendants), and adjudication in the alternative forum is by an independent judiciary applying what American courts regard, generally, as due process of law."].)[6]

It is apparent that when the defendants meet this burden, a burden of production falls on the plaintiffs if they wish to show the alternative forum is nonetheless unsuitable because the action cannot actually be brought there despite the defendants' stipulations. In *Chong, supra*, 58 Cal.App.4th 1032, 1038, the court noted that in accordance with their burden on the suitability issue, the defendants consented to the jurisdiction of the courts of China and to the tolling of any statute of limitations. In opposition, the plaintiff argued China was nonetheless an unsuitable forum. The court noted, however, that the *plaintiff* adduced no evidence on the matter. (*Ibid.*) Citing *Chong*, a commentator has noted: "In California, *Stangvik* states that the defendant bears the burden of proof [on suitability]. [Citation.] This burden seems to quickly shift to the plaintiff on the issue of the appropriateness of the alternative forum once the defendant consents to jurisdiction in the alternative forum." (Pawlicki, Stangvik v. Shiley *and Forum Non Conveniens Analysis: Does a Fear of Too Much Justice* Really *Close California Courtrooms to Foreign Plaintiffs?* (Spring 2000) 13 Transnat'l Law. 175, 186, fn. 60, citing *Chong, supra*, 58 Cal.App.4th at p. 1038.) This approach is logical, because a foreign forum's *power* to hear and resolve a dispute is frequently undisputed. Requiring the defendants to routinely address the issue would often result in a waste of time and resources, and the needless introduction of comparative law issues. If the plaintiffs produce competent and persuasive evidence showing that despite the defendants' stipulations the action cannot be brought in the alternative forum, it is then the defendants' burden to respond with countervailing evidence as they have the ultimate burden of persuasion. (See *Abdullahi v. Pfizer, Inc.* (2d Cir. 2009) 562 F.3d 163, 189.)

■ Here, defendants' written stipulations satisfied their burden on the suitability issue. Further, on appeal, defendants' attorneys confirm their clients "will submit to the jurisdiction of the courts of Mexico and will toll any statute of limitations during the pendency of the present action." The attorneys are officers of the court, and we accept their representations as binding. (*Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 683 [75 Cal.Rptr.3d 828].)

---

[6] Out-of-jurisdiction opinions on the forum non conveniens doctrine are plentiful, and plaintiffs cite a few that contain language supportive of their theory. (See *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.* (2001) 136 F.Supp.2d 1271; *Chiquita Internat. Limited v. Fresh Del Monte Produce, N.V.* (Fla.Dist.Ct.App. 1997) 690 So.2d 698; *Local Billing, LLC v. Webbilling* (C.D.Cal., Dec. 10, 2008, No. CV 08-3083 PSG (MANx) 2008 U.S.Dist. Lexis 103142.) Plaintiffs cite no California opinion establishing any additional burden on the suitability issue.

█ Moreover, by staying the action rather than dismissing it, the court retains the power to verify both that the Mexico courts accept jurisdiction of the action and that defendants abide by their stipulations. If, for any reason plaintiffs cannot bring their action in Mexico, they may return to California and request that the court lift the stay. (*Guimei, supra*, 172 Cal.App.4th at p. 704; *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 758 [59 Cal.Rptr.2d 229].) " 'Both the terms of section 410.30 and the prior decisional law . . . distinguish between the dismissal of an action on grounds of forum non conveniens, and the stay of an action on that ground.' This distinction . . . 'does not merely lie in terminology. The staying court retains jurisdiction over the parties and the cause . . . .' " (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 857 [126 Cal.Rptr. 811, 544 P.2d 947], italics omitted.) The court's finding on the suitability issue is proper.

## C

### 1

Additionally, defendants actually did submit evidence on the subject matter jurisdiction of Mexican courts. The declaration of Mexican attorney Andere, a specialist in international law, states that while Mexican law recognizes no cause of action for tortious interference with contract, "the Courts of Mexico can properly exercise subject matter jurisdiction over the matters set forth in the [complaint] because it concerns an alleged contract for the sale of shares of stock in a Mexican corporation and an alleged interference by the five defendants with regard to performance of the alleged contract."

The Andere declaration also states, "Mexican Courts may . . . adjudicate the claims of the [complaint] based upon 'illicit acts' under Mexican laws and deriving from the alleged interference by the defendants with performance of the contract." Further, it states, "Mexican law does provide broad legal remedies for tortious conduct by individuals which results in harm to other individuals." It explains, "Articles 1910, 1912, 1915, and 1916 of the Federal Civil Code . . . concern liability and damages for '*actos ilicitos,*' " and the "Mexican legal doctrine of '*acto ilicito*' provides that any person who acts in a manner which is against the public interest or good customs and which causes damage to another person, is liable to (must indemnify) the person suffering the harm."

In line with the Andere declaration, *Coufal Abogados v. AT&T, Inc., supra*, 223 F.3d 932, 936, indicates that Mexico has chosen to regulate conduct such as tortious interference with contract "under its general illicit behavior statute." In *Dtex, LLC v. BBVA Bancomer, S.A., supra*, 512 F.Supp.2d 1012, the court held Mexico was an adequate alternative forum for an action alleging tortious interference with contract and intentional interference with prospective contractual relations, even though Mexico does not recognize

such causes of action. (*Id.* at pp. 1013, 1022–1023.) An expert "testified that Mexican law and judicial system are competent, fair, and adequate to address the claims in Dtex's complaint. [Citation.] In a Mexican tort case based on the facts alleged, Dtex could pursue monetary damages for property loss, loss of business, loss of use, and other claims." (*Id.* at p. 1022.) The court explained, "Mexican law may limit some categories of damages that Dtex may recover for the tortious conduct it alleges. But the record makes clear that Mexican law recognizes Dtex's claims for relief and makes significant damages available for those claims." (*Ibid.*)

 We disagree with plaintiffs' assertion the court could not consider Andere's declaration because defendants submitted it with their reply. While additional evidentiary matter submitted with the reply ordinarily should not be allowed, the court has discretion to consider it when it poses no prejudice to the opposing party. (*Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8 [13 Cal.Rptr.2d 811].) Plaintiffs have shown no abuse of discretion. Since defendants had no duty to submit this type of evidence with their moving papers, it was not untimely and caused plaintiffs no prejudice. If plaintiffs believed, despite defendants' stipulations, that they cannot bring their action in Mexico, they should have produced evidence on the issue. Plaintiffs, however, submitted no evidence suggesting Mexico is an unsuitable forum. They belatedly submitted evidence in support of a motion for reconsideration, but the matter became moot when they filed their notice of appeal.

2

Plaintiffs now seek to introduce the evidence they submitted to the trial court in support of their motion for reconsideration. They request that we take judicial notice of the declaration of Mexican attorney Tellez, along with other materials such as provisions of Mexican law and excerpts from a treatise on Mexican law. Much of plaintiffs' appellate briefing is based on materials submitted with the request for judicial notice. Defendants object and we deny the request.[7]

 "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085]; see *Doers v. Golden Gate*

---

[7] As a protective measure, defendants also filed a request for judicial notice of sections of a treatise on Mexican law, and of several declarations that are already in the appellate record. Plaintiffs then filed a supplemental request for judicial notice of provisions of Mexican law. They also filed a further supplemental request for judicial notice of the declaration of one of their attorneys, who attempts to authenticate social network profile pages of three of the defendants, ostensibly to prove they reside in California. We deny each of these requests.

*Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].) In *City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477 [78 Cal.Rptr.3d 621], the court denied a request for judicial notice of an out-of-state statute, explaining, " 'An appellate court may properly decline to take judicial notice . . . of a matter which should have been presented to the trial court for its consideration in the first instance.' " (*Id.* at p. 1488, fn. 5.) "We also disregard statements in the briefs that are based on such improper matter." (*Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 882 [67 Cal.Rptr.3d 675].)

Plaintiffs' assertion that we are *required* to take judicial notice of the Tellez declaration is incorrect. Plaintiffs cite Evidence Code section 459, which provides in part: "(a) The reviewing court shall take judicial notice of (1) each matter properly noticed by the trial court and (2) each matter that the trial court was required to notice under Section 451 or 453." Plaintiffs also cite Evidence Code section 453, which provides: "The trial court shall take judicial notice of any matter specified in Section 452 if a party requests it and: [¶] (a) Gives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and [¶] (b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter." Plaintiffs claim these provisions apply because they requested that the trial court take judicial notice of the Tellez declaration and other materials and defendants had sufficient notice. The evidence, however, was not before the court before it ruled on the forum non conveniens motion. Their effort to submit new evidence for our review in the first instance is improper.

## III

### *The Court's Conclusion the Balancing of Public and Private Interests Favors Litigation in Mexico Does Not Constitute Abuse of Discretion*

### A

Initially, we address plaintiffs' assertion the court erred by not construing the evidence on the balancing test most favorably to them. Plaintiffs rely on opinions pertaining to appeals of rulings on motions for dismissal under various provisions of rule 12(b) of the Federal Rules of Civil Procedure (28 U.S.C.). (See, e.g., *Altmann v. Republic of Austria* (9th Cir. 2002) 317 F.3d 954; *Murphy v. Schneider National, Inc.* (9th Cir. 2003) 349 F.3d 1224, amended (9th Cir. 2004) 362 F.3d 1133; *Dalla v. Atlas Maritime Co.* (C.D.Cal. 1983) 562 F.Supp. 752.) We need not discuss these opinions; they are inapt because this action does not involve a rule 12(b) motion.

■ Plaintiffs are incorrect in stating there is no California authority addressing the "proper standard for assessing the factual allegations" in a forum non conveniens inquiry. Under California law, the trial court "has the duty to weigh and interpret the evidence and draw reasonable inferences therefrom." (*Guimei, supra*, 172 Cal.App.4th at p. 698.)

B

" ' "Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815 [42 Cal.Rptr.2d 459].) " 'The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria.' " (*Ibid.*, italics omitted.) As long as there is a reasonable or even fairly debatable justification for the ruling, we will not set it aside. (*Guimei, supra*, 172 Cal.App.4th at p. 696.)

■ As to private interest factors, there is ordinarily a strong presumption in favor of the plaintiffs' choice of forum. (*Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 611 [41 Cal.Rptr.2d 342].) That factor is not given substantial weight, however, when, as here, the plaintiffs are not residents or citizens of the United States. (*Stangvik, supra*, 54 Cal.3d at p. 753; *Campbell v. Parker-Hannifin Corp., supra*, 69 Cal.App.4th at p. 1543; *Ford Motor Co. v. Insurance Co. of North America*, at pp. 610–611.) "It is difficult to justify giving preferential status to a plaintiff's choice of forum if the plaintiff is not a resident." (*Stangvik, supra*, at p. 755, fn. 7.)

■ The Kochergas concede they reside in San Diego County. While Diaz and Barba attempt to raise a dispute as to where they reside, the evidence is such that we presume they also reside in California. We agree with plaintiffs that parties committing torts in California can expect to get sued here. A presumption of convenience arises from the defendants' place of residence, but as with other balancing factors, it is not conclusive. (*Stangvik, supra*, 54 Cal.3d at p. 756.)

Defendants claim their alleged wrongdoing occurred mainly in Mexico, but they do not fairly view the complaint. It alleges "most of the acts complained of occurred in the County of San Diego." Plaintiffs' theory is that defendants hatched their plan to interfere with their contractual rights here, and carried it out primarily through e-mails and other communications made from here, to each other and to third parties in Mexico. The complaint does allege, however, that at least some wrongdoing occurred in Mexico. The Kochergas

allegedly had meetings with plaintiffs' neighboring landowner in Mexico, who intended to develop a resort that would compete with La Tambora, "to try to incite the neighboring landowner to take hostile actions against Plaintiffs," and as a result plaintiffs were compelled to make an unfavorable deal with the neighbor to join in a venture with him.

Importantly, however, all of the effect, harm, and damages caused by defendants' alleged conduct occurred in Mexico and would require proof through third party witnesses in Mexico. The complaint alleges that to interfere with Hahn's negotiations with Eugenio Kocherga for the purchase of his minority interest in Impulsora, Diaz and/or Barba did such things as arrange for a person in Mexico to impersonate a process server to threaten harm to Hahn and his family if he did not dismiss the California fraud action against them; hire a Mexican attorney to interfere with the Hahn's deal with Eugenio Kocherga; cause false and disparaging remarks about Hahn to be aired on Mexican radio stations; distribute to Mexican officials false information on Hahn; and send an inflammatory, malicious, and libelous letter about Hahn to the president of Mexico. Plaintiffs seek damages for the harm to their business reputations in Mexico. Plaintiffs oversimplify the matter by asserting they can prove their case through certain admissions of wrongdoing Barba and Diaz made in the bankruptcy proceeding and evidence, such as e-mails, that may be found in defendants' homes or businesses in California.

 Moreover, plaintiffs' view that trial of their tortious interference claim will not involve issues pertaining to the underlying contract is mistaken. The elements of an action for tortious interference are " '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513].) "It has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege [and prove] that the contract *would otherwise have been performed* . . . ." (*Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 997 [135 Cal.Rptr. 720], italics added; see 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 738, p. 1064.) " 'A cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm.' " (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 391 [10 Cal.Rptr.3d 429].)

Defendants submitted evidence that the letter agreement between Hahn and Eugenio Kocherga for the transfer of his entire interest in Impulsora may be invalid because he had already transferred part of the interest to Diaz. Diaz

submitted a declaration that states that in 2003, four years before the alleged breach of the letter agreement, Diaz paid Eugenio Kocherga for an interest in the shares he held in Impulsora, and Diaz had obtained a share certificate. Plaintiffs' complaint alleges this transfer violated Impulsora's governing documents. We disagree with plaintiffs' view that the only evidence required on the validity of the letter agreement is a copy of the document.

Additionally, defendants submitted evidence of the lack of a causal nexus between the breach of contract and plaintiffs' inability to develop La Tambora as originally planned. Defendants submitted the declaration of Luis Bustamante Valencia, the president of the Consejo Para la Defensa de la Costa del Pacifico, A.C., a nonprofit environmental advocacy organization in Mexico. The declaration states the organization works with other groups, scientists and the Universidad Nacional Autónoma de México (UNAM) in "protecting the Chamela-Cuixmala Biosphere Reserve, in the Mexican Pacific coast." Hahn's proposed La Tambora project is within the "zone of influence" of the Chamela-Cuixmala Biosphere Reserve. Consejo Para la Defensa de la Costa del Pacifico took legal action against the development on the ground Hahn failed to provide the Secretaria del Medio Ambiente y Recursos Naturales (SEMARNAT), the environmental agency of the Mexican government, "with an Environmental Impact Statement that satisfied the requirements of Mexican law, and because of the project's destructive impact upon the environmental and natural resources." Consejo Para la Defensa de la Costa del Pacifico and UNAM organized a colloquium on the matter, during which "literally hundreds of scientific, technical, and legal arguments developed . . . which demonstrated the deficiencies of the permitting process of the La Tambora project." As a result, in August 2007 SEMARNAT denied La Tambora the "last permit . . . required . . . to change the use of the land involved from that of forest preservation to a land use for the construction of a tourism development project." We are unpersuaded by plaintiffs' view that to prove entitlement damages they need only produce expert testimony on the value of Eugenio Kocherga's minority interest in Impulsora. Plaintiffs must first prove a causal connection between defendants' conduct and their harm, meaning that the letter agreement would have been performed absent their interference with it.

Diaz also submitted evidence showing potential difficulties of conducting discovery in Mexico for an action litigated here. A declaration by William Phippard, a San Diego attorney, states: "During the last 25 years I have had occasion to transmit (or observe the transmittal by others) . . . letters rogatory between courts in California and various courts in Mexico, both along the international border and in the interior of Mexico. In my experience, preparation, transmittal and return of a court to court letter rogatory request can take on the order of four to six months or more. If technical deficiencies are raised by the receiving Mexican court, the procedure may need to be repeated."

Additionally, Diaz's declaration states: "San Diego is a seriously inconvenient forum for me to defend the lawsuit brought by . . . Hahn. In order to defend myself against the simplistic allegation that I brought down an entire development project by interfering with a contract for sale of minority shares related to a single parcel of [the consolidated development project], I would need to bring to San Diego numerous Mexican witnesses, Mexican governmental officials with responsibility for environmental permitting of La Tambora, legal experts on Mexican development law, legal experts on Mexican environmental law, experts on Mexican contract law, and experts on the economics of Mexican land development projects. For these and other reasons, trial of this matter in San Diego would constitute a very significant logistical and financial burden on me and on my co-defendants."

As to public interest factors, California has an interest in protecting the integrity of the courts here, including a federal bankruptcy court. Plaintiffs' alleged conduct, however, did not affect the bankruptcy proceeding or cause any other harm here. The alleged harm all occurred in Mexico. Mexico has a substantial interest in conduct that interferes with a business deal for the development of property there, particularly when the conduct includes nefarious activities such as causing slanderous statements to be made on Mexican radio stations, a Mexican resident to falsely present himself as a process server, a Mexican attorney to file a frivolous action, and false information to be circulated to government officials and the president of Mexico.

On this record, we cannot say no reasonable judge would make the same ruling. To the contrary, defendant adduced substantial evidence on the balancing issue and plaintiffs did not refute it with their own evidence. The private interest factors point to Mexico as being a more convenient forum, because it appears from plaintiffs' own detailed complaint allegations that the majority of the third party witnesses are located in Mexico. The amenability of unwilling witnesses to service of process will be greater in Mexico, and the cost of obtaining discovery and testimony there will be reduced. Moreover, the court could reasonably find no reason to further burden the courts of California, and potential jurors would have little interest in the action since plaintiffs' alleged conduct had no effect here.

Plaintiffs' reliance on *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.* (11th Cir. 2007) 485 F.3d 1233 (*Grupo*) is misplaced. In *Grupo*, the forum state was Florida, which "resolves conflict-of-laws questions according to the 'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." (*Grupo*, at p. 1240.) In considering various factors, the appellate court held an action for misappropriation of trade values was subject to Florida law rather than Mexican law, and thus the district court

erred by dismissing the action on summary judgment. (*Id.* at pp. 1240, 1246–1247.) Under the Restatement's test, the principal location of the defendant's conduct was the single most important contact. (*Grupo*, at pp. 1240, 1246–1247.) In the instant case, we are not dealing with a "most significant relationship test" under the Restatement, and California courts flexibly balance numerous factors. *Grupo* does not suggest the court here abused its discretion on the facts before it.

## DISPOSITION

The order is affirmed. Defendants are entitled to costs on appeal.

McDonald, J., and Aaron, J., concurred.