Filed 5/20/26  SoberLife Recovery Solutions v. C-4 Consulting CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SOBERLIFE RECOVERY SOLUTIONS et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>C-4 CONSULTING, INC. et al.,<br><br>    Defendants and Respondents. | D085152<br><br>(Super. Ct. No. 37-2023-00052416-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Loren G. Freestone, Judge.  Affirmed.

Ruddell, Bixler, Mauritson, Evans, Fox & Buss, and Josh T. Fox for Plaintiffs and Appellants.

Wilson Elser Moskowitz Edelman & Dicker, David J. Aveni and Natalie F. Lakosil for Defendant and Respondent C-4 Consulting, Inc.

Gordon Rees Scully Mansukhani, Debra E. Meppen, Rebecca Marsden, Ramon Flores and Don Willenburg for Defendant and Respondent Christopher Bennett.

SoberLife Recovery Solutions (SoberLife), and principals Bryan Amaro[1] and Deomel Soriano (collectively, Plaintiffs) appeal from an order of the trial court granting a motion to dismiss their complaint against C-4 Consulting Group, Inc. (C-4), Christopher Bennett, and the Opportunity Collective (collectively, Defendants) based on forum non conveniens, pursuant to Code of Civil Procedure section 418.10, subdivision (a)(2). Appellants assert the trial court erred in expanding the scope of a mandatory forum selection clause in a mutual nondisclosure agreement and failing to enforce a permissive forum selection clause in a subsequent consulting agreement. Finding no error, we affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

The relationship between the parties arose in January 2023, when Bennett, the chief marketing officer for C-4, contacted Amaro, a principal of SoberLife, to offer consulting services. Less than six months later, in June 2023, Bennett proposed a deal in which he would purchase Amaro's and Soriano's interest in SoberLife.

### A.    The Complaint

In December 2023, Plaintiffs filed a complaint against Defendants alleging causes of action for breach of contract (SoberLife against C-4), breach of confidential relationship (SoberLife against C-4), constructive fraud (SoberLife against Defendants), and intentional interference with contractual relations (Amaro and Soriano against Defendants).

In the first cause of action, for breach of contract by SoberLife against C-4, Plaintiffs asserted SoberLife "was governed by an operating agreement

---

1    On October 30, 2025, counsel notified this court that Appellant Bryan Amaro died on or about October 8, 2025. Thomas Amaro and Marcos Amaro, as administrators of his estate, have been substituted as parties in this action.

[(the 'Operating Agreement')] between Amaro, Soriano, and another member, J.M. Evosevich." "In January of 2023, C-4 acting by and through Bennett, offered to serve as a consultant to SoberLife." That same month, SoberLife and C-4 "entered into a Confidentiality Agreement," (the Confidentiality Agreement), which was attached as exhibit A to the complaint.

"In February of 2023, C-4 and SoberLife entered into a consultation agreement [(the Consultation Agreement)], under which C-4 agreed to perform consultation services for SoberLife." The Consultation Agreement was attached as exhibit B to the complaint. "The ultimate purpose of the Consultation Agreement, as articulated in Paragraph 2 thereof, was 'to increase [earnings before interest, taxes, depreciation, and amortization, or] EBITDA[,] and market position for a potential sale of the business and acquisition at the highest possible EBITDA multiple while continuing to improve upon the already best-in-class clinical care they provide to their clients.' "

The complaint further alleged that in late March or early April 2023, Defendants instead entered into a conspiracy "to engage in a course of conduct specifically designed to (1) destroy the contractual relationship between the Plaintiffs and Evosevich, and (2) purchase the interests in SoberLife held by Amaro and Soriano." In doing so, "C-4 violated both the Confidentiality Agreement and the Consultation Agreement."

The remaining causes of action realleged and incorporated by reference each of the foregoing allegations.

In the second cause of action, for breach of confidential relationship, by SoberLife against C-4, Plaintiffs alleged further: "Through both the Confidentiality Agreement and the Consultation Agreement, C-4 undertook to act in the interests of SoberLife and to refrain from using the information

3

gained and persons met by C-4 during the consultation process for C-4's own interests or for the interests of third parties other than SoberLife. [¶] C-4 intentionally breached the terms of its confidential relationship with SoberLife, with the intent of destroying SoberLife, for the benefit of the Defendants," thereby causing financial harm to SoberLife.

In the third cause of action, for constructive fraud, by SoberLife against Defendants, Plaintiffs alleged Defendants took advantage of the trust created by the Confidentiality Agreement and the Consultation Agreement, and "relied upon the Plaintiffs' trust, concealing the [c]onspiracy and their activities in furtherance thereof, resulting in damages to SoberLife."

Finally, in the fourth cause of action, for intentional interference with contractual relations, by Amaro and Soriano against Defendants, Plaintiffs alleged, "Defendants, and each of them, knew of the Operating Agreement between Amaro, Soriano, and Evosevich, and acted with the intent to destroy the contractual relationship created by the Operating Agreement."

## B. Defendants' Motion to Dismiss

C-4, later joined by Bennett, filed a motion to dismiss the complaint based on forum non conveniens. They relied on the following forum selection clauses in the Confidentiality Agreement and the Consultation Agreement, attached to the complaint as exhibits A and B, and asserted that the clauses precluded jurisdiction in California.

### 1. The Confidentiality Agreement

Paragraph 9 of the Confidentiality Agreement includes the following integration, choice of law, and forum selection clauses:

> "This Agreement constitutes the entire agreement of the Parties with respect to the Confidential Information disclosed hereunder and supersedes all prior or contemporaneous oral or written agreements concerning such Confidential Information. This Agreement may not be

4

amended except by a written agreement signed by authorized representatives of both Parties.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, excluding its conflict-of-laws principles.  *The exclusive venue for any dispute relating to this agreement shall be in the courts of the State of Illinois in McHenry County, Illinois.* . . . This Agreement shall be binding on the Parties and their respective successors, assigns, employees, agents, officers, directors and shareholders, and the Parties shall use their respective best efforts to bind same to this Agreement."  (Italics added.)

### 2.     The Consultation Agreement

Paragraph 9 of the Consultation Agreement includes the following integration clause:

"This Agreement constitutes the entire agreement of the parties hereto, and will supersede any and all other statements, representations, and agreements between the parties regarding the subject matter of this Agreement. Each party acknowledges that it has relied on its own judgment in entering into this Agreement."

Paragraph 11 of the Consultation Agreement includes the following choice of law and forum clause:

"This Agreement will be construed, administered and enforced in accordance with the laws of the State of Delaware and venue for any legal proceeding shall be proper in a court of competent jurisdiction [in] Sussex County, Delaware."

Defendants asserted that each of the causes of action in the complaint relied on the contractual obligations in both agreements, and were therefore governed by the foregoing forum selection clauses.

### C.     Plaintiffs' Opposition to the Motion to Dismiss

Plaintiffs opposed the motion to dismiss.  They conceded that the forum selection clause in the Confidentiality Agreement was mandatory.  However,

5

they asserted the forum selection clause in the Consultation Agreement—which was signed after the Confidentiality Agreement—was permissive, therefore the trial court had to conduct a traditional forum non conveniens analysis, and that Defendants had not met their burden to establish California was not a convenient forum.[2]

In addition, Plaintiffs asserted the fourth cause of action for intentional interference with contractual relations was outside the scope of either the Confidentiality Agreement or the Consultation Agreement. They argued the claim was not based on any relationship between C-4 and SoberLife, and instead that the Operating Agreement for SoberLife was the only potentially relevant contract. Thus, the claim did not arise and was not related to the Confidentiality Agreement or the Consultation Agreement.

### D.    The Trial Court's Ruling

After requesting additional briefing on the issue of the potential impact of the choice-of-law provision, the trial court granted the motion to dismiss the complaint on grounds of forum non conveniens.

The trial court noted that the parties agreed that Delaware law applies, per the relevant agreements, and that "the venue-selection provisions of the [Consultation Agreement] are permissive while those in the [Confidentiality Agreement] are mandatory." The court explained, under Delaware law, forum selection clauses are enforced "unless enforcement would be 'unreasonable and unjust,' " or the clause is rendered invalid. In addition, "under both California and Delaware law, a forum selection clause may apply to non-contract claims when those claims require interpretation of the contract or depend on the same factual allegations underlying a breach of

---

2      Plaintiffs also pointed out that the parties executed a second Confidentiality Agreement in connection with Bennett's purchase offer, with its own forum clause setting Arizona as the exclusive venue.

contract claim." The court concluded, "Because the tortious inference cause of action is based on Plaintiffs' allegations of breach, it cannot be decided without deciding the issue of breach and are therefore encompassed by the forum selection clauses. As such, all of Plaintiffs' clauses of actions may be tried together in Illinois."

The court then addressed additional arguments Plaintiffs had raised regarding the ability of Illinois to assert jurisdiction over Bennett and Opportunity Collective. The court concluded Illinois would have jurisdiction over Bennett, but that it was unclear whether Opportunity Collective entered into any agreements with Plaintiffs and whether and to what extent the claims against Opportunity Collective were intertwined with those of the other defendants.[3]

The court dismissed the complaint "to allow refiling in the state courts of Illinois in McHenry County."

Plaintiffs filed a timely notice of appeal.

## II.    DISCUSSION

Plaintiffs assert the trial court erred by effectively rewriting the Confidentiality Agreement and the Consultation Agreement. They argue their second and third causes of action survive insofar as they are based on breaches of the Consultation Agreement, which contains only a permissive venue selection clause, and that the Confidentiality Agreement does not apply to non-signatories Amaro and Soriano.

### A.    Relevant Legal Principles

"When a contract contains a forum selection clause, this court will interpret the forum selection clause in accordance with the law chosen to govern the contract." (*Ashall Homes Ltd. v. ROK Entertainment Group, Inc.*

---

3    These issues are not raised by the parties in the present appeal.

7

(Del. Ch. 2010) 992 A.2d 1239, 1245 (*Ashall*); see also *Schmidt v. Trinut Farm Management, Inc.* (2023) 92 Cal.App.5th 997, 1010–1011 [California courts generally enforce choice of law and forum selection clauses].) The parties agree that Delaware law governs in this case.

Under Delaware law, " '[f]orum selection clauses are presumptively valid and should be specifically enforced.' " (*National Industries Group v. Carlyle Inv. Management LLC* (Del. 2013) 67 A.3d 373, 383.) "The courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.' " (*Ashall, supra*, 992 A.2d at p. 1245.) "Under Court of Chancery Rule 12(b)(3), a court will grant a motion to dismiss based upon a forum selection clause where the parties 'use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action.' " (*Ibid*.) "Forum selection clauses can be applied not only to contract-based claims but also tort claims arising out of, or depending upon, the contractual relationship in question." (*Ibid*.)

Under both Delaware and California law, in situations in which there is no conflicting extrinsic evidence, the interpretation of a contractual forum selection clause is a matter of law that we review de novo. (See *Germaninvestments AG v. Allomet Corp.* (2020) 225 A.3d 316, 330; *Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471.)

**B.    The Trial Court Did Not Err by Dismissing the Complaint**

The parties agree that the forum selection clause in the Confidentiality Agreement is mandatory and that the forum selection clause in the Consultation Agreement is permissive. (See *Ashall, supra*, 992 A.2d at p. 1250 [explaining that a provision stating that a specific court *shall* have

8

jurisdiction over any dispute is mandatory, rather than permissive].) Plaintiffs assert, however, that the trial court erred in applying the mandatory forum selection clause in the Confidentiality Agreement to each of their causes of action, and to non-signatories Amaro and Soriano. For the reasons we explain, we are not persuaded and, instead, based on our own independent review, agree that the forum selection clause in the Confidentiality Agreement governs all asserted causes of action.

Before addressing Plaintiffs' individual assertions, we note that the mandatory forum selection clause in the Confidentiality Agreement is quite broad. It provides: "The exclusive venue for *any dispute relating to this agreement* shall be in the courts of the State of Illinois in McHenry County, Illinois." Delaware courts have explained: "The phrase 'relating to' is broader than the phrase 'arising out of.' Black's Law Dictionary defines 'relating to' to mean 'to have some relation to' or 'to have bearing or concern [on]; [to] pertain.' [Citation.] '[Delaware] courts have considered the connector "relating to" to be "paradigmatically broad." ' " (*Florida Chemical Company, LLC v. Flotek Industries, Inc.* (Del. Ch., 2021) 262 A.3d 1066, 1083 (*Florida Chemical*).) "The use of the phrase 'related to' thus expands the scope of the Delaware Forum Provision *beyond* the universe of claims 'based on the rights and obligations created by the underlying agreement.' " (*Ibid.*)

Here, Plaintiffs' primary assertion is that the trial court erred by applying the forum selection clause in the Confidentiality Agreement to claims that arose under the Consultation Agreement. More specifically, they argue that the trial court effectively reformed both agreements and disregarded the forum selection clause in the Consultation Agreement. We disagree.

9

The trial court did not disregard the forum selection clause in the Consultation Agreement. Rather, after setting forth both forum selection clauses, the court concluded that the mandatory clause in the Confidentiality Agreement controlled the claims at issue here. The trial court noted that all four causes of action arose from "Plaintiffs' allegations of breach," could not be decided without deciding the issue of breach, and were therefore encompassed by the forum selection clause in the Confidentiality Agreement.

Although the trial court did not expressly state which contract it was referring to, there is no dispute here that Plaintiffs alleged, for each asserted cause of action, that "C-4 violated *both* the Confidentiality Agreement and the Consultation Agreement." (Italics added.) Construing the term "relating to" broadly, as we must under Delaware law, we agree with the trial court, and independently conclude that all of Plaintiffs' asserted causes of action are properly characterized as "*dispute[s] relating to*" the Confidentiality Agreement. Accordingly, they are governed by the broad, mandatory forum selection clause in the Confidentiality Agreement.

Contrary to Plaintiffs' assertions, the mere fact that their claims *also* relate to an alleged breach of the Consultation Agreement does not render the mandatory forum selection clause in the Confidentiality Agreement inapplicable. Nor does the permissive forum selection clause in the Consultation Agreement somehow negate the mandatory clause in the Confidentiality Agreement. If Plaintiffs had sued under claims that did not relate to the Confidentiality Agreement, and instead required the courts to construe, administer and/or enforce *only* the Consultation Agreement, then perhaps the permissive forum selection clause would apply, and the cause could be tried in Delaware or somewhere else. But that is not the case here. As we have explained, the claims here all relate to the Confidentiality

10

Agreement; that fact does not change just because Plaintiffs also allege a breach of the Consultation Agreement.

Next, Plaintiffs point to the integration clause in the Consultation Agreement, and argue that, since the parties executed the Consultation Agreement several weeks after the Confidentiality Agreement, the Consultation Agreement should control.

Paragraph 9 of the Consultation Agreement states that it "constitutes the entire agreement of the parties hereto, and will supersede any and all other statements, representations, and agreements between the parties *regarding the subject matter of this Agreement*." By its plain language, the integration clause is limited to the subject matter of the Consultation Agreement, which sets forth the parties' mutual expectations for the consulting arrangement. The Confidentiality Agreement was executed before the parties determined what the scope would be, if any, for the consulting work, and is, on its face, broader in terms of the confidential information covered. In other words, to the extent the parties exchanged confidential information that ended up being outside the scope of the Consultation Agreement, the Confidentiality Agreement would still apply.

Although they are related in some ways, the two contracts are independent, and thus, the integration clause in the Consultation Agreement does not negate the terms of the Confidentiality Agreement. (See, e.g., *Florida Chemical, supra*, 262 A.3d at p. 1082 [integration clause interpreted based on plain language of the provision]; *CA, Inc. v. Ingres Corp.* (Del. Ch. Dec. 7, 2009, No. 4300-VCS) 2009 WL 4575009 at *46–48 [a forum selection provision in the more "fundamental" agreement applied to an ancillary agreement that did not contain a forum selection provision, despite an integration clause in the ancillary agreement]; *Jenks v. DLA Piper Rudnick*

11

*Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 18–20 [integration clause expressly limited to subject matter of termination agreement in which it was contained did not negate terms of prior arbitration agreement].)

Finally, Plaintiffs assert that Delaware law precludes application of the forum selection clause in the Confidentiality Agreement to non-signatories Amaro and Soriano. They argue that the only claim brought by Amaro and Soriano is the intentional interference with contractual relations claim, and that claim is tied specifically to the SoberLife Operating Agreement between them and nonparty Evosevich. But again, that claim incorporates and realleges that C-4 breached *both* the Confidentiality Agreement and the Consultation Agreement.

When read in conjunction with the rest of the complaint, it appears the crux of Plaintiffs' claims is that Defendants utilized confidential information obtained under both agreements to undermine the relationship between Amaro, Soriano, and Evosevich. Notably, there are no factual allegations in the complaint establishing a cause of action for intentional interference with a contractual relationship[4] beyond the allegation Defendants intentionally breached the two agreements by using confidential information to benefit their own interests.

Moreover, Amaro signed the Confidentiality Agreement as the chief operating officer of SoberLife, and was also the individual designated to

---

4       The elements of a claim for tortious interference with contractual relations are " ' "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." ' " (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1196; see also *Lipson v. Anesthesia Services, P.A.* (Del. Ch. 2001) 790 A.2d 1261, 1284 [setting forth analogous elements under Delaware law].)

receive notices, demands, and communication under the agreement. The agreement itself only identified SoberLife and C-4, specifically, as the contracting parties, but stated further that it, "shall be binding on the Parties and their respective successors, assigns, employees, agents, officers, directors and shareholders, and the Parties shall use their respective best efforts to bind [the] same to this Agreement." There is no dispute that Amaro and Soriano, as two of the three principals that constituted the SoberLife entity, were included as "employees, agents, officers, directors and shareholders."

If Amaro and Soriano were not to receive any direct benefit under the Confidentiality Agreement, they likewise would have no legally cognizable claim, insofar as the asserted claims are based on improper use of confidential information in breach of the Confidentiality and Consultation Agreements. (See, e.g., *Ashall, supra,* 992 A.2d at p. 1249 [forum selection clauses enforceable where such enforcement " 'is foreseeable by virtue of the relationship between the signatory and the party sought to be bound' "]; *McWane, Inc. v. Lanier* (Del. Ch., Jan. 30, 2015, No. CV 9488–VCP) 2015 WL 399582, at \*7 ["The doctrine of equitable estoppel prevents a non-signatory to a contract from embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful."].) Here, although Amaro and Soriano did not receive a direct *monetary* benefit from the Confidentiality Agreement, they did receive a benefit as principals of SoberLife and it was foreseeable based on the plain language of the contract itself that the forum selection clause would be enforced against them.

In sum, the trial court did not err by concluding the mandatory forum selection clause applied to each of the four asserted causes of action.

### III.   DISPOSITION

The order dismissing the complaint is affirmed.  Respondents are awarded costs on appeal.

KELETY, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.