Filed 4/16/15  Doe v. Hsu CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| JANE DOE, | |
| Plaintiff and Appellant, | E057754 |
| v. | (Super.Ct.No. CIVRS120627) |
| CHRISTOPHER HSU, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Barry L. Plotkin, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Jane Doe, in pro. per.; Steptoe & Johnson, Seong H. Kim, J. Patrick Jacobs and Ilhwan Justin Park for Plaintiff and Appellant.

Reed Smith, Margaret M. Grignon, Anne M. Grignon and Kasey J. Curtis for Defendant and Respondent.

Plaintiff and appellant Jane Doe, a resident of South Korea, and respondent and defendant Christopher Hsu met in Hong Kong and became romantically involved.  Doe

1

filed a complaint against Hsu in San Bernardino County Superior Court alleging causes of action related to events occurring during their tumultuous relationship. According to Doe, Hsu forced her to obtain an abortion; he beat her; and kidnapped her. He also tried to ruin her reputation by posting negative comments about her on the Internet and threatening to post videos of them having sex. All of these incidents occurred in South Korea, Hong Kong or the Maldives.

Hsu filed a Motion to Quash Service and to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Dismiss on the Grounds of Forum Non Conveniens (motion).[1] He claimed California was not the proper forum for litigation of Doe's claims and California did not have personal jurisdiction over him because he was domiciled in Hong Kong. Hsu had filed his own lawsuit in South Korea alleging that Doe's family had assaulted and kidnapped him. The trial court granted the motion on both grounds.

Doe appeals the grant of Hsu's motion on the following grounds: (1) since Hsu was domiciled in California, he was properly served; (2) Hsu was subject to personal jurisdiction because he was domiciled in Upland, California; (3) the trial court erred by finding that South Korea was a suitable alternate forum; (4) the trial court erred by refusing to grant a continuance in order for her to conduct discovery on jurisdiction; and (5) the trial court erred by denying her motion for new trial and/or vacate the judgment.

---

[1] "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere. [Citation.]" (*Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).)

In order to resolve this appeal, we need only determine if one of the grounds for dismissal relied upon by the trial court was proper. We will assume, without deciding, that California had personal jurisdiction over Hsu and that he was properly served. The complaint was properly dismissed on grounds of forum non conveniens. Further, Doe has waived any claim regarding the improper denial of her motion for new trial and/or vacate the judgment. We affirm the trial court's order.

## FACTUAL AND PROCEDURAL HISTORY[2]

### A.      SUMMONS AND COMPLAINT

On April 4, 2012, Doe filed a complaint for invasion of privacy, false imprisonment, assault, battery, intentional infliction of emotional stress and intentional interference with prospective economic advantage (complaint). Doe alleged she was a resident of Seoul, South Korea and that Hsu was a resident of San Bernardino County, California. Doe was a 37-year-old woman who, from 1996 to December 1999, had been a prominent anchorwoman for the Seoul Broadcasting Company. She also earned a living doing product promotions and obtaining endorsements. Hsu was an investment banker.

In May 2010, Doe and Hsu met in Hong Kong. After Doe returned to South Korea, he pursued her and they began dating. In October 2010, Doe discovered she was pregnant. Hsu demanded that she get an abortion. He forced her to take sleeping pills

---

[2] A majority of the facts presented in the lower court pertained to whether California had personal jurisdiction over Hsu. We will briefly discuss these matters in this section but will focus on the facts in relation to the forum non conveniens finding by the trial court.

3

and cold medicine in order to harm the baby. Doe succumbed to Hsu's demands and underwent an abortion. Hsu was violent during their relationship. He had smashed her cellular telephones in her presence. Hsu had forcibly detained her while they were visiting other countries by taking her passport. Hsu demanded that Doe send him nude pictures of herself. She also discovered him surreptitiously filming their sexual encounters.

In March 2011, Doe broke up with Hsu. Hsu sent her Twitter messages threatening to tell the public about her abortion. He also claimed to have sent their sex videos he had taped to several people. Hsu showed up at her home in South Korea. The following day, he broke into her house. He assaulted her and destroyed her home. Doe locked herself in the bathroom and called family members. This infuriated Hsu. He broke in and beat her. Doe's family members arrived at the home and found her beaten. They did not call the police but made Hsu pledge in writing that he would never hurt Doe again. Hsu advised Doe and her family that he was returning to Hong Kong.

Several days later, Hsu contacted Doe and begged her to take him back. Hsu returned to South Korea and begged Doe's family to forgive him. Doe agreed to get back together with Hsu. Hsu gave Doe an engagement ring and they went on a trip to the Maldives. While there, Hsu was again violent with her. He tore up her passport and threw it in the ocean. She had to remain in the Maldives until it was replaced. Doe ended her relationship with Hsu.

Hsu again came to South Korea and begged Doe to get back together with him. Hsu forced her to drive two hours from her home. He hit her face. He busted open her

4

lip and knocked one of her teeth loose. He ripped her clothes. She was able to escape and returned to Seoul. Hsu sent her apology letters and gifts but Doe did not respond.

In November 2011, Hsu unexpectedly showed up at her home in South Korea and raped her. She was too fearful and humiliated to report the incident to police. When Doe refused to get back together with Hsu he posted sex videos, which he claimed involved him and Doe, on the Internet. Hsu contacted reporters and television producers offering to give them the sex videos.

All of Doe's causes of action were based on the above acts committed by Hsu against her. She insisted she had suffered a loss of reputation and standing in the South Korean community.

As exhibits, Doe attached Twitter messages she claimed had been sent by Hsu; pictures of her ransacked home; pictures of broken glasses and cellular telephones; a letter purportedly written by Hsu apologizing for breaking Doe's items; and other letters written in Korean. Doe attached a proof of service to the complaint. Hsu was served through his father at 2153 North First Avenue in Upland after two unsuccessful attempts to find Hsu at the location.

B.     THE MOTION

Hsu, specially appearing, filed a motion pursuant to Code of Civil Procedure[3] sections 410.10, 410.30, 415.10, 415.20 and 418.10 on the grounds that (1) Hsu, an individual, was not personally served with the complaint; (2) service on Hsu's father was

_____

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

ineffective because Hsu did not live at the Upland house; (3) Hsu did not have sufficient minimum contacts with California to warrant personal jurisdiction over him; (4) the courts of South Korea could provide a suitable alternative forum for the action; and (5) the balance of private and public interest factors favored dismissal of the action.

Hsu only admitted he had a brief relationship with Doe. Hsu submitted a declaration that he had never been personally served with the complaint. He denied that he resided at the Upland house. The Upland house belonged to his parents and he had not lived in the house for 10 years. Hsu was domiciled in Hong Kong for the prior six years and he provided three of his Hong Kong addresses. For the prior six years, he had been continuously employed in Hong Kong. He listed four employers including Kilometre Capital Management (Hong Kong) Limited. He had filed tax returns in Hong Kong the prior six years. In December 2011, he filed a civil and criminal lawsuit in South Korea against Doe for assault, kidnapping and extortion; the case was pending.

Hsu alleged that South Korea was the proper forum for Doe's claims. Doe was a resident of South Korea. She made her living and her reputation was based on her work in South Korea. The conduct alleged in the complaint all occurred in South Korea. The only other location was the Maldives. None of the allegations in the complaint involved incidents occurring in California. All witnesses and documents relevant to the case were in South Korea.

Hsu argued in the motion that Doe had the burden of proving personal jurisdiction and that Doe had not met her burden. Hsu argued in the alternative that the action should be dismissed on the grounds of forum non conveniens. South Korea was an adequate

6

forum because the parties were already engaged in litigation in the country. Both private and public interest factors weighed toward litigating in South Korea.

C.     DOE'S OPPOSITION

Doe filed opposition to the motion. Doe, for the first time, contended that "[m]any of the acts" committed by Hsu against Doe were perpetrated in California. Further, Doe elected to litigate her claims in California because her reputation in South Korea would be further damaged by negative publicity in South Korea. Any judgment in South Korea would have to be executed in California because Hsu owed property in California. Doe contended that evidence Hsu was residing at the Upland house was substantial.

Doe presented her own declaration. In the declaration she presented further evidence that Hsu lived in California, including a letter written by Hsu to Doe in September 2011, with a return address as the Upland house; she had visited Hsu at the Upland house in November 2010 and he had assaulted her; and that she had visited Hsu's home that he owned in Newport Beach.

Doe declared she could not file a lawsuit in South Korea because any judgment against Hsu would not be enforceable because Hsu had no intention of complying with orders from South Korea. Doe insisted she had initiated a criminal investigation of Hsu in South Korea and Hsu had not cooperated with authorities.

Doe attached a real property tax assessor record for the Newport Beach house. Hsu was listed as an "ABSENTEE" owner. The Upland house was listed as the mailing address. Doe also attached copies of Hsu's driver's license, which listed the Upland house address. Doe provided an investigator's declaration that Hsu leased a car in

7

California and registered it on March 2012. He used the Upland house address. In addition, she presented evidence that Hsu was a registered voter at the Upland house address.

Doe argued that California was the most efficient forum. Hsu lived in California and owned property. Hsu had refused to comply with lawful orders from South Korea. Further, negative publicity in Korea coming from the lawsuit would hurt Doe's career. Her family members were willing to travel to California to testify. She also sought a continuance to conduct further discovery on jurisdiction.

D.    <u>REPLY TO OPPOSITION TO THE MOTION</u>

Hsu filed his reply. Hsu reiterated he did not live at the Upland house; it was his parent's home. Hsu acknowledge he used the Upland house as his address for his California driver's license. He had not voted in an election since moving to Hong Kong. Doe had stayed with Hsu in his apartment in Hong Kong for extended periods of time from June 2010 to March 2011. She had her own key and kept her belongings in the home. Doe had never been in the Upland house. No assault could have occurred inside the house.

Hsu stated he would be granted permanent residence status in Hong Kong in April 2013. He had been issued identification in Hong Kong in March 2006. He also had an employment visa in Hong Kong that would expire once he was a permanent resident. Between January 2010 and November 2011, Hsu spent 95 percent of his time outside California, in Hong Kong or in other Asian countries.

Hsu denied all of the allegations of abuse.  He claimed that on March 29, 2011, he was kidnapped by Doe's family.  He was forced to sign a document stating he had hurt Doe.  He was repeatedly beaten.  His computer was seized and the contents were copied.  They threatened that he would be killed.  He was eventually driven to the airport where he was forced to return to Korea.  Upon his arrival in Hong Kong, he was admitted to the hospital with abdominal bleeding and head injuries.  He reported the kidnapping and assault to Hong Kong authorities.  Hsu attached a report he made to Hong Kong police regarding the incident.  Hsu's lawsuit in South Korea was based on these events.

Hsu admitted that he traveled to California in December 2011 for an extended visit with his family and was seeking psychological treatment.  He leased a car during the visit but it was a gift to his brother.

Hsu again argued the case should be litigated in South Korea.  Hsu had not disregarded South Korean law; he himself had a lawsuit in Korea.  All of the witnesses were located in South Korea or Hong Kong.

E.     DOE'S SUPPLEMENTAL OPPOSITION

Doe filed a supplemental opposition.  It essentially reiterated the same allegations and statements as the complaint and opposition.  Doe insisted that Hsu had committed acts in California, including the assault on her at the Upland house and disseminating hurtful information about her on the Internet.  Further, Doe's counsel provided that Hsu's psychologist, Dr. Kalla, who was in Santa Monica, had confirmed that defendant had seen her on 10 occasions since March 29, 2011.  Doe submitted more copies of emails she claimed to have received from Hsu.

9

Hsu filed opposition to the supplemental and amended opposition filed by Doe. Hsu submitted a declaration from his real estate broker that she understood Hsu lived in Hong Kong and the Newport Beach house was rental property.

F.     TENTATIVE RULING AND HEARING ON THE MOTION

The trial court issued a tentative ruling.  The trial court reviewed the evidence and concluded Doe had not met her burden to establish jurisdiction.  It also found, in the alternative, assuming jurisdiction, that Hsu had met his burden of showing an alternative suitable forum for the action.  The trial court noted according to the complaint, all of the alleged assaults against Doe occurred in South Korea, the Maldives or Hong Kong.  All of the witnesses resided outside of California.  Further, there was already an action involving the parties in South Korea.  Many of the documents were written in Korean. There was no evidence that Hsu was evading service of process in South Korea because he had a lawsuit pending in that forum.

The motion was heard on September 27, 2012.  The trial court at the outset advised the parties the burden as to proper service was on Doe and that the burden of establishing forum non conveniens was on Hsu.  The trial court recognized that Doe was a resident of South Korea.  The trial court also noted there was inadmissible hearsay in the declarations submitted.  However, neither party had submitted objections to the hearsay so it was admissible.  The trial court stated that it would not consider any documents submitted in Korean because they had not been translated.  However, the trial court would consider as true that Hsu had filed a case against Doe and her family in South Korea.

The trial court first noted, "I'm not persuaded by any of the argument that the plaintiff makes about why Korea is an inappropriate venue. The fact that [Hsu] has no property in Korea is of no significance." The trial court advised Doe that she could collect on the South Korean judgment in California. The trial court also noted, "Korea is the singular place where she should get the truth out that she wants to spread." There also was no merit to her argument that the local Korean/American community knew anything about what had happened; she did not live in California.

Doe argued Hsu had failed to show that the statute of limitations on her causes of action had not run in South Korea. Also, Hsu had to be subject to service in South Korea. The trial court stated Doe's argument that Hsu had avoided service of process for a criminal case was unsupported by the evidence. The trial court further stated, "[H]is presence in a Korean forum I certainly think would give her the power to file a cross-complaint in the same action."

As to whether Hsu lived in San Bernardino County, the trial court noted it was undisputed that Hsu had a California driver's license, for which he had to list a California address; he went to college in California; he owned a home in Newport Beach from which he derived rental income; and he was at one time a registered voter in San Bernardino County. The trial court stated, "I will tell you, and I said in the tentative, none of these indicia of residence that you're relying on, whether he said it under penalty of perjury or not, are sufficient to establish substantial contacts with the State of California or the County of San Bernardino, in my view."

11

Doe's counsel then argued Hsu had submitted himself to jurisdiction in California by violently attacking Doe in the Upland house and by disseminating information on the Internet. The trial court noted it was a "glaring oversight" that Doe had not included the acts committed in San Bernardino County when the complaint was filed.

The trial court noted that it seemed both parties had very volatile emotions. Doe's counsel then argued that Hsu had been seeing a psychotherapist in Santa Monica and used his leased vehicle, registered at the Upland house, to get to the appointments. The trial court noted, "Those are all after the fact. Those visits, as far as we can tell, are all after the fact." Doe argued a continuance was necessary so she could conduct discovery to prove that Hsu was a resident at the Upland house. Doe claimed to be able to provide a witness who would testify Hsu was not living and working in Hong Kong. Doe also argued Hsu had to prove that the statute of limitations had not run in South Korea.

G.     RULING

The trial court granted the motion. It adopted its findings in the tentative ruling. The trial court found that subservice was not effective under section 415.20, subdivision (b). The trial court also dismissed the complaint based on lack of personal jurisdiction. It noted any assault in Upland was only a small part of the case, if it happened at all.

The trial court also ruled, in the alternative, on the forum non conveniens issue. It found there was an available suitable alternative forum in South Korea "despite the fact that there's no evidence before the Court of what the legal requirements are for timely filings of actions in Korea. Presumably an action could be maintained in Hong Kong as

12

well." All of the witnesses were in South Korea or Hong Kong. It ruled, "California certainly lacks the substantial interest that Korea has."

The written judgment was entered on September 27, 2012.

H.    MOTION FOR NEW TRIAL

On October 22, 2012, Doe filed a notice of intent to move for a new trial, or in the alternative, to vacate the order of dismissal, as will be discussed in more detail *post*. Judgment was entered on November 27, 2012, denying Doe's motion for new trial.

**DISCUSSION**

A.    FORUM NON CONVENIENS

In her opening brief, Doe contended the trial court erred by dismissing her action based on forum non conveniens because Hsu proffered no evidence that South Korea was a suitable alternative forum. Specifically, Hsu presented no evidence supporting that the statute of limitations in South Korea had not run as to Doe's causes of action or that he was amenable to service in South Korea. In the respondent's brief, appellate counsel for Hsu stated Hsu is willing to stipulate to personal jurisdiction in South Korea and to toll the statute of limitations. Doe replied Hsu's late offer to waive any statute of limitations or personal jurisdiction claims did not change that the trial court could not grant the forum non conveniens motion because Hsu failed to present "evidence" that South Korea was a suitable alternative forum. We find the action is properly dismissed on forum non conveniens grounds.

"When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court

13

shall stay or dismiss the action in whole or in part on any conditions that may be just."
(§ 410.30, subd. (a).) Forum non conveniens involves a two-step analysis: (1) the court must determine whether there is a suitable alternative forum; and (2) the court must balance the private interest of the litigants and the interests of the public in retaining the action. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) The first determination, suitability of a forum, is a legal question which we review de novo. (*Roulier v. Cannondale* (2002) 101 Cal.App.4th 1180, 1186; *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436.)

For a forum non conveniens motion, the threshold issue of suitability of an alternative forum is determined by a finding that there is jurisdiction over the defendant in the alternative forum and the assurance the action will not be barred by a statute of limitations. (*Shiley, Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132-133.) "It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations." (*Hahn v. Diaz-Barb* (2011) 194 Cal.App.4th 1177, 1190 (*Hahn*).)

In the lower court, Hsu did not agree to waive the statute of limitations or submit to personal jurisdiction in South Korea. The trial court ruled there was an available forum in South Korea "despite the fact that there's no evidence before the Court of what the legal requirements are for timely filings of actions in Korea." The trial court also noted that all of the witnesses were in South Korea and Hong Kong, and that California lacked the substantial interest that Korea would have in the action. The trial court failed

14

to make the proper threshold determination that the statute of limitations had not run in South Korea.

However, reversal of the dismissal motion is not required. This threshold determination is nondiscretionary, involves no balancing of interests, and, as stated, has been held to be subject to de novo review on appeal. (*Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1528.)

*Hahn*, *supra*, 194 Cal.App.4th 1177, involved whether a case should be heard in Mexico rather than California. Unlike here, the defendant had agreed in the lower court to submit to jurisdiction in Mexico and waive any statute of limitations. The *Hahn* court noted, "Further, on appeal, defendants' attorneys confirm their clients 'will submit to the jurisdiction of the courts of Mexico and will toll any statute of limitations during the pendency of the present action.' The attorneys are officers of the court, and we accept their representations as binding. [Citation.]" (*Id*. at p. 1191.)

In the instant case, Hsu's counsel states in the respondents brief, "[A]ll a moving defendant must do to demonstrate that a particular forum is adequate, is consent to jurisdiction in the alternative forum and agree to toll any applicable statute of limitations for the time the action has been pending in California as a condition to granting the motion. [Citations.] Although Hsu contends that he has met his burden of establishing that South Korea is a suitable alternative forum, should this Court disagree, Hsu is willing to stipulate to personal jurisdiction in South Korea and to toll the statute of limitations. In all events, were this stipulation necessary, it would be sufficient to establish the adequacy of South Korea as an alternative forum."

15

It certainly would have been preferable for Hsu to have stipulated to jurisdiction and tolling of the statute of limitations in the trial court. We accept that Hsu is willing to do so now. Again, our review of the threshold determination on forum non conveniens dismissals is de novo. With Hsu's concession, there are grounds upon which to uphold the dismissal for forum non conveniens. There is nothing more that Doe can offer to contest this threshold finding. This is enough for the threshold determination that South Korea was a suitable alternative forum.

Doe appears to additionally complain Hsu did not meet his burden of proving South Korea was an alternative suitable forum by providing evidence that she could bring her causes of action in South Korea. She contends Hsu's attempts to cite cases suggesting that South Korea would be a suitable forum for Doe's claims, and proposing to submit to the jurisdiction of South Korean's courts, was "too little, too late." Initially, we disagree that no evidence was presented. Hsu provided evidence that he had brought similar claims in South Korea. It is inconceivable that he could bring a lawsuit with similar claims but Doe would somehow be foreclosed from bringing the same causes of action.

Additionally, in *Hahn*, the defendant argued, like Doe here, that "as part of defendants' burden on the threshold suitability issue, they were required to educate the court on the subject matter jurisdiction of Mexican courts, and because they submitted no evidence that the courts there would have subject matter jurisdiction over a dispute concerning tortious conduct committed in California, they failed to satisfy the burden." (*Hahn*, *supra*, 194 Cal.App.4th at p. 1188.) In rejecting this claim, the appellate court

16

first noted that it was not the defendant's burden to present evidence regarding the laws of Mexico and whether it had subject matter jurisdiction to meet the threshold requirement of a suitable alternative forum. Rather, the *Hahn* court noted the defendant was relying upon "the rare 'no remedy at all' exception. In California, the 'no remedy at all' exception has been construed to apply only narrowly, 'such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law.' [Citation.]" (*Id.* at pp. 1188-1189.) The *Hahn* court then noted that the plaintiffs had not argued that Mexico lacked an independent judiciary or American "concepts of due process and fairness." It also relied on other court cases finding that Mexico would provide for such a lawsuit. (*Id.* at pp. 1189-1190.) It concluded, "[i]t is apparent that when the defendants meet this burden [stipulating to the tolling of the statute of limitations and agreeing to jurisdiction], a burden of production falls on the plaintiffs if they wish to show the alternative forum is nonetheless unsuitable because the action cannot actually be brought there despite the defendants' stipulations." (*Id*. at p. 1191.)

Based on the foregoing, Hsu did not have the burden to present evidence that Doe could bring her claims in South Korea. We recognize that Hsu did not agree to stipulate to toll the statute of limitations or submit to South Korean jurisdiction until this appeal. As such, Doe could reasonably argue that she did not have the opportunity to prove that South Korea did not have subject matter jurisdiction over the dispute. However, the trial court determined in the lower court, albeit erroneously, that Hsu had met his threshold burden by ignoring whether the statute of limitations would bar Doe's claim in South

17

Korea, and finding that since Hsu had filed a lawsuit in South Korea, Hsu would be subject to jurisdiction. At no time did Doe complain that South Korea lacked an independent judiciary or American concepts of due process and fairness in response to this ruling. Generally, issues not raised in the trial court are waived for purposes of appeal. (*Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 411.) Doe does not raise such claim in her reply brief. Further, such a claim lacks merit as Hsu filed almost identical causes of action for assault, kidnapping and extortion in his own lawsuit in South Korea.

As noted, all Hsu had to show was that the claim in the alternative forum would not be barred by the statute of limitations and that he would be subject to jurisdiction. The "'no remedy at all'" exception applies only in "'rare circumstances,'" which are not evident here. (*Hahn*, *supra*, 194 Cal.App.4th at pp. 1188-1189.)

Having determined that South Korea was a suitable alternative forum, we turn to the next inquiry, as to whether the trial court abused its discretion by finding the private interests of the litigants and the interests of the public favored litigating the matter in South Korea. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) "The secondary balancing inquiry is subject to an abuse of discretion standard of review under which we give the court's determination substantial deference. [Citations.]" (*Hahn*, *supra*, 194 Cal.App.4th at p. 1187; *Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1037.) The trial court adequately analyzed these factors.

"The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of

18

compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. [Citations.]" (*Stangvik*, *supra*, 54 Cal.3d. at p. 751.)

Where the "[p]laintiff is a resident of California, . . . substantial weight must be given to his choice of forum in this state." (*Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 684 [Fourth Dist., Div. Two].) However, this is not true where the plaintiff is a foreign citizen. (*Stangvik*, *supra*, 54 Cal.3d. at pp. 754-755 ["Where . . . the plaintiff resides in a foreign country, . . . the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed"].) Where the plaintiff is not a California resident, the trial court has discretion to dismiss the action outright. (See *Baltimore Football Club, Inc. v. Superior Court* (1985) 171 Cal.App.3d 352, 364-365.)

Doe admitted that she was a resident of South Korea. As such, no preference is given for filing the action in California. As for the private interests, the trial court found that all of the witnesses were in Hong Kong and Korea. With most, if not all, of the acts occurring outside of California, it was certainly reasonable for the trial court to presume most of the witnesses would not be from California. Most of the documents would also be in Korean. Also, the South Korean court already had experience with the parties and similar issues due to the case filed by Hsu.

19

Further, the trial court reasonably concluded that California lacked the substantial interest that South Korea had in the matter. The trial court properly concluded that Doe's reputation was only relevant in South Korea, and not in California. Further, the San Bernardino County Superior Court, which is already congested, did not have a substantial interest in a matter involving a foreign plaintiff and acts that occurred in other countries. The trial court did not abuse its substantial discretion in finding the proper forum for the litigation was in South Korea.

Based on the foregoing, Doe's complaint was properly dismissed on grounds of forum non conveniens.

B.      MOTION FOR NEW TRIAL

Doe contends that her motion for new trial and/or vacate the judgment should have been granted and that the trial court abused its discretion by denying the motion.

1.      *ADDITIONAL FACTUAL BACKGROUND*

In her motion for new trial and/or to vacate the order of dismissal, Doe alleged there was an irregularity in the proceeding; there was newly discovered evidence; an abuse of discretion prevented Doe from having a fair trial; and the evidence was insufficient to justify the decision.

Doe had newly discovered evidence mostly connected to her claim that California had personal jurisdiction over Hsu. She alleged she had new evidence Hsu lied about his employment in Hong Kong. The newly discovered evidence included trial testimony from the civil case filed by Hsu in South Korea. The trial testimony was discovered after the hearing. Doe also obtained a letter from Dr. Kalla, Hsu's psychiatrist, that between

20

March 2011 and January 2012 Hsu visited Dr. Kalla 10 times. Doe also had evidence from a former tenant in Hsu's Newport Beach home, that Hsu had him send rent payments to an Upland bank and that Hsu told him he intended to make Newport Beach his home.

Doe provided a document purporting to be witness testimony from Hsu's witness, Linus Lee, in the civil trial. The testimony was from July 16, 2012. Lee stated that Hsu had been "unemployed since last year." Lee, who lived in Las Vegas, Nevada, was the only witness in Hsu's trial.

Hsu filed opposition to the motion for new trial and/or vacate the judgment. Hsu argued all of the "'new'" evidence could have been discovered prior to September 27, 2012. Further, all of the new evidence was inadmissible hearsay, not properly authenticated, or lacked foundation. Further, the explanation for the delay in discovering the evidence was not sufficient. Hsu filed specific objections to each of the declarations submitted by Doe.[4]

Doe filed a reply to Hsu's opposition to the motion for new trial. Doe also filed responses to the objections by Hsu to Doe's declarations. Doe asked the trial court to take judicial notice of the judgment in the case filed by Hsu in South Korea. The South Korean court found against Hsu in the civil trial.

---

[4] A detailed recitation of these objections is not necessary.

21

Hsu filed supplemental opposition. Hsu provided documentation that showed Doe had filed another lawsuit in Los Angeles County Superior Court on October 31, 2012, raising the same issues as those she had raised in the complaint.

The motion for new trial was heard on November 26, 2012. The trial court made no ruling in regard to Doe's filing of a new case in the Los Angeles Superior Court. In addition, the trial court stated, "I'm not going to address the forum non conveniens because we only get to that issue if the Court finds that the Court has jurisdiction but declines to exercise it. The Court is convinced the Court does not have jurisdiction." The trial court agreed with Hsu that there was no newly discovered evidence and that the evidence was not material. It again confirmed that by finding there was no jurisdiction, it need not decide whether a new trial on the forum non conveniens motion should be granted. The trial court affirmed that Hsu was domiciled in South Korea, not Upland.

The trial court adopted the arguments by Hsu raised in his opposition, that Doe had not presented new evidence in support of her motion; Doe had not exercised due diligence in discovering and producing new evidence; and there was no newly discovered admissible evidence regarding minimum contacts or that Hsu was properly served. The trial court did not decide the forum non conveniens portion of the new trial motion.

## 2. *ANALYSIS*

Since this court has decided the motion was properly dismissed on forum non conveniens grounds, the relevant inquiry is whether the motion for new trial and/or vacate the judgment presented newly discovered and material evidence showing South Korea was not a suitable forum, and that the trial court erred by denying Doe's motion

22

for new trial. However, as set forth *ante*, the trial court did not make a finding on the motion for new trial and/or vacate the judgment based on forum non conveniens. Doe did not inform this court of this fact in either her opening or reply briefs, and does not raise a claim that the trial court failed to make a proper ruling. As such, any claim the trial court erred by denying her motion for new trial and/or vacate the judgment is waived on appeal.

"We are not bound to develop appellant[']s[] arguments for [her]." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) "'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] . . . 'The absence of cogent legal argument or citation to authority allows [the] court to treat the contention as waived.' [Citations.]" (*Cahill*, at p. 956; see also Cal. Rules of Court, rule 8.204(a)(1)(B) [an appellate brief must "support each point by argument and, if possible, by citation of authority"].) "[I]t is incumbent upon an appellant to present argument and authority on each point made." (*County of Sacramento v. Lackner* (1979) 97 Cal.App.3d 576, 591.)

Here, Doe has not provided this court with proper legal argument or citation to the record in making her argument that the trial court abused its discretion by denying her motion for new trial and/or vacate the judgment in relation to the forum non conveniens issue. Doe has provided general legal authority that the denial of a new trial motion is reviewed for an abuse of discretion. She makes no argument that the trial court erred by

failing to actually *rule* on the motion for new trial and/or vacate the judgment, and did not alert this court of such failure to rule by the trial court. In fact, she provides no recitation of what actually occurred during the hearing on the motion for new trial and/or vacate the judgment, or any analysis of why the refusal on the part of the trial court to rule on the matter was erroneous. Doe bears the burden on appeal to affirmatively establish error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Doe's failure to properly argue this issue on appeal waives any claim of error.

## DISPOSITION

We accept Hsu's stipulation that he will submit to personal jurisdiction in South Korea and will not raise a claim of statute of limitations to bar Doe's claims. We affirm the judgment. Hsu, as the prevailing party on appeal, is awarded his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

HOLLENHORST
Acting P. J.

CODRINGTON
J.

24