Filed 3/4/25  Route Four v. Hawthorne Hydroponics CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROUTE FOUR LLC,<br><br>    Plaintiff and Appellant,<br><br>       v.<br><br>HAWTHORNE HYDROPONICS, LLC et al.,<br><br>    Defendants and Respondents. | G063106<br><br>(Super. Ct. No. 30-2020-01129185)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Thomas S. McConville, Judge. Affirmed.

BG Law, Steven T. Gubner, Philip J. Bonoli and Theodore G. Spanos for Plaintiff and Appellant.

Call & Jensen, Jeffrey M. David, Lisa A. Wegner and Melinda Evans for Defendants and Respondents.

\*        \*        \*

Plaintiff Route Four LLC (Route Four) is in the business of selling and marketing hydroponics equipment to cannabis retailers in California and Washington.[1] It asserted a single claim for intentional interference with contract against defendants The Scotts Miracle-Gro Company, The Hawthorne Gardening Company, The Hawthorne Collective, Inc., and Hawthorne Hydroponics, LLC (collectively, Hawthorne defendants). Generally, it claimed Hawthorne defendants' purchase of a hydroponics lighting company interfered with contracts Route Four had with several clients. The trial court granted summary judgment in Hawthorne defendants' favor. Generally, it found the undisputed evidence showed Hawthorne defendants' purchase of the lighting company did not cause any disruption to the relevant customer contracts. Rather, the alleged disruptions occurred years before Hawthorne defendants purchased the company.

On appeal, we find no error in the trial court's ruling. Route Four's complaint and discovery responses confirm that Hawthorne defendants did not cause the alleged contractual disruptions. Rather, as the court found, the undisputed facts show these disruptions occurred well before Hawthorne defendants purchased the lighting company. As such, the judgment is affirmed.

---

[1] Hydroponics is the technique of growing plants without soil. It requires specialized lighting. Examples of hydroponics equipment include air purification and ventilation systems, lighting, and plant nutrients.

FACTS AND PROCEDURAL HISTORY

I.

THE 2018 AGREEMENT

Route Four initially filed this lawsuit in 2020 against several defendants that did not include Hawthorne defendants. Hawthorne defendants were added to this lawsuit in 2023. We begin by describing the origins of this lawsuit, which trace back Route Four's purchase of a hydroponics business in 2018. We then discuss Hawthorne Hydroponics, LLC's (Hawthorne Hydroponics) purchase of a lighting company in 2021, which led to Hawthorne defendants' inclusion in this lawsuit.

This lawsuit traces back to a 2018 sale involving Route Four's purchase of certain assets of Hydroponics, Inc., a company founded by Brandon Burkhart in 2012. Burkhart is a defendant in the underlying case but is not a party to this appeal. Hydroponics, Inc. started as a retail business with two stores in Riverside and San Bernardino specializing in hydroponic equipment and products. It initially attempted to sell products online but ceased having an online presence in 2018.

In 2017, Burkhart founded Luxx Lighting, Inc. and Athena Products, Inc. (Athena) with Ivan Van Ortwick. Athena manufactured and distributed plant nutrients for use with hydroponic gardening. Luxx Lighting, Inc. manufactured and distributed wholesale hydroponic lighting equipment. In this opinion, "Luxx Lighting, Inc." refers to the corporate entity owned by Burkhart and Van Ortwick. The term "Luxx brand" refers to the brand of lighting products originally made by Luxx Lighting, Inc., which was later sold to Hawthorne Hydroponics.

Burkhart decided to focus his efforts on Luxx Lighting, Inc. and Athena. So, in 2018, he sold most of Hydroponics, Inc.'s assets to Route Four.

3

The sale was memorialized in an Asset Purchase Agreement dated July 23, 2018 (the 2018 Hydroponics agreement). Under this agreement, Route Four bought (1) Hydroponics, Inc.'s retail shops in Riverside and San Bernardino, (2) the right to conduct internet and phone sales of related equipment and supplies in California and Washington, and (3) the Hydroponics brand name and its related goodwill (but not the corporate entity Hydroponics, Inc.).

The 2018 Hydroponics agreement contained a noncompetition clause (the noncompetition clause). It provided, "[Burkhart and Hydroponics, Inc.] agree[] that for a period of 5 years after the Closing Date [(July 23, 2018)], he or it will not, directly or indirectly, engage in or become interested financially in . . . any business (other than [Route Four]) that is engaged in the hydroponics retail, distribution or services in the states of California and Washington . . . ."

After the sale, Hydroponics, Inc., i.e., the corporate entity still owned by Burkhart, changed its name to Canop Holdings, Inc. (Canop). Like Burkhart, Canop is a defendant in the underlying action but is not a party to this appeal.

## II.

### THE INITIAL COMPLAINT

Demand for Luxx brand products allegedly grew following Route Four's purchase of Hydroponics, Inc.'s assets in 2018. Burkhart claims he attempted to direct customers that wanted to purchase Luxx brand products to Route Four. But he maintains Route Four was unable to maintain

customer relationships because it overcharged and failed to maintain adequate inventory.[2]

In February 2020, Route Four filed this lawsuit against Burkhart and Canop. Among other things, Route Four alleged that "since early 2019," Burkhart and Canop have "actively attempt[ed] to destroy Route Four's business." In particular, Route Four alleged Burkhart and Canop had allowed "[Luxx Lighting, Inc.] and Athena [to] embark[] on retail sales, distribution, and services both in person and over the internet, throughout Washington, California, and otherwise, of lighting, nutrient and additive products that are directly competitive with products offered by Route Four." Route Four also claimed Burkhart had directed Luxx Lighting, Inc. to poach three of its customers.

Based on the above allegations, Route Four claimed that Burkhart and Canop had (1) breached the 2018 Hydroponics agreement by violating the noncompetition provision, (2) interfered with Route Four's contractual relationships with various customers, and (3) interfered with Route Four's prospective economic advantage, among other claims.

III.

PURCHASE OF THE LUXX BRAND

Respondents in this case are The Scotts Miracle-Gro Company (Scotts), The Hawthorne Gardening Company (Hawthorne Gardening), The Hawthorne Collective, Inc. (Hawthorne Collective), and Hawthorne Hydroponics.

---

[2] These facts were disputed below, but they are immaterial to the outcome of this case. We include them for context.

5

Scotts is a publicly traded company that sells branded consumer products for lawn and garden care. The three other Hawthorne defendants are all wholly owned subsidiaries of Scotts. Hawthorne Gardening sells nutrients, lighting, and other materials used in indoor and hydroponic gardening. Hawthorne Collective focuses on certain investments in the cannabis industry. Finally, Hawthorne Hydroponics is a wholesale distributor of various gardening products such as hydroponics equipment, nutrients, and additives.

In December 2021, nearly two years after Route Four filed this lawsuit against Burkhart and Canop, Hawthorne Hydroponics entered into an agreement with Luxx Lighting, Inc., Burkhart, and Van Ortwick, to purchase the Luxx brand (the 2021 Luxx sale). The 2021 Luxx sale did not include the corporate entity Luxx Lighting, Inc. or any of its liabilities that occurred prior to the sale's closing. Following the 2021 Luxx sale, Luxx Lighting, Inc. changed its name to Burk Ortwick Holdings, Inc. to allow Hawthorne Hydroponics to use the Luxx brand name.

IV.

THE AMENDED COMPLAINT

In April 2022, a few months after the 2021 Luxx sale, Route Four filed a third amended complaint (the amended complaint), which added Hawthorne defendants to this lawsuit. The amended complaint also named as defendants Burkhart, Canop, Amberlee Rails, Luxx Lighting, Inc., and Athena (the latter two were added in Route Four's first amended complaint).[3]

---

[3] Amberlee Rails is Burkhart's sister and was an officer of Hydroponics, Inc. It is unclear when she was added to this lawsuit. The claims against her are immaterial to this appeal.

6

The amended complaint pled 11 causes of action against the various defendants. But Hawthorne defendants were only named in a single claim for intentional interference with contract, which was asserted "Against All Defendants."

The relevant intentional interference claim alleged that Route Four "had contracts with various clients formerly serviced by Hydroponics, Inc. for the sale of various products." All defendants had allegedly "intentionally interfered with the contractual relationship between [Route Four] and those clients by communicating with [Route Four's] clients, by offering to beat [Route Four's] prices by selling the Luxx [brand] and Athena products directly and/or by selling and purchasing Luxx [brand] and Athena . . . ." The amended complaint then listed four specific contractual disruptions.

The first three disruptions involved the same allegedly poached customers identified in the initial complaint and did not involve Hawthorne defendants. The amended complaint alleged Luxx Lighting, Inc. had interfered with these customer contracts by selling Luxx brand products directly to these clients.

The fourth disruption focused on Hawthorne defendants. Route Four alleged that due to Hawthorne defendants' purchase of the Luxx brand in 2021, "[Route Four] was no longer able to sell, distribute and/or supply Luxx [brand] products to its clients and Customers."

Other allegations in the complaint, however, stated that Route Four had been unable to sell Luxx brand products prior to Hawthorne defendant's purchase of the Luxx brand. For example, the amended complaint again alleged that Burkhart and Canop had been attempting to destroy Route Four's business since 2019. It claimed "that since

7

approximately November 2019, Burkhart has instructed [Luxx Lighting, Inc.] and Athena . . . to cease all sales of their products to Route Four. Specifically, Route Four was informed by employees of [Luxx Lighting, Inc.] and Athena on or around December 2019 that despite submitting to [Luxx Lighting, Inc.] and Athena's purchasing procedures and paying for the cost of its products to then sell to Route Four's customers, [Luxx Lighting, Inc.] and Athena would refuse to sell any products to Route Four. As a result, Route Four is no longer able to sell [Luxx Lighting, Inc.] or Athena products to its customers, thereby disrupting Route Four's ability to conduct its business."

V.

MOTION FOR SUMMARY JUDGMENT

Hawthorne defendants filed a motion for summary judgment (the motion) in May 2023.

Prior to the motion, Route Four had sought to depose Hawthorne defendants' most qualified person (PMQ) concerning the 2021 Luxx sale. Hawthorne defendants' prior counsel identified David Jusseaume as the PMQ, and his deposition was scheduled for February 2023. The day before this deposition, prior counsel told Route Four it had discovered over a thousand relevant e-mails during deposition preparation. The parties agreed to continue the PMQ deposition to allow prior counsel to review and produce the e-mails. New counsel later substituted into this case for Hawthorne defendants, and the PMQ deposition was renoticed for July 11, 2023.

The PMQ deposition proceeded on July 11, 2023, but Hawthorne defendants produced Lance Melnichenko rather than Jusseaume. During Melnichenko's deposition, Route Four purportedly learned that several other employees of Hawthorne defendants had information about the 2021 Luxx sale that Melnichenko could not provide. So, after the PMQ deposition, Route

8

Four served deposition notices and issued deposition subpoenas for these employees.

Route Four was unable to take the above depositions before its deadline to oppose the motion. In its opposition, Route Four claimed the depositions were necessary for its response to the motion and asked the trial court to continue the motion's hearing date.

The motion was heard in August 2023. After the hearing, the trial court granted the motion and denied Route Four's continuance request. As to the continuance, the court ruled, "[Route Four's] supporting evidence fails to establish the specific facts [Route Four] expects to obtain, an estimate of the time necessary to obtain the information, and the specific steps or procedures [Route Four] intends to utilize to obtain such evidence."

As to the motion's merits, the trial court found the undisputed evidence showed Hawthorne defendants had not disrupted any customer contract. The court began by highlighting the theory underlying Route Four's claim against Hawthorne defendants: "as a result of [the 2021 Luxx sale], '[Route Four] was no longer able to sell, distribute and/or supply Luxx [brand] and Athena products.'" It then noted that Hawthorne defendants had "presented evidence that by *November 2019*, [Route Four] . . . was no longer capable of selling Luxx [brand] or Athena products to its customers." (Italics added.)

The trial court reasoned, "it is [Hawthorne defendants'] purchase of [the Luxx brand] that provides the basis for [Route Four's] claims against them. It is undisputed that those assets were not acquired by [Hawthorne defendants] until December 2021. The facts show that the breach of [the 2018 Hydroponics agreement] occurred years before [Hawthorne defendants] entered the picture. This defeats the causation element, and [Route Four's]

9

case against [Hawthorne defendants].” The court subsequently entered judgment in Hawthorne defendants’ favor (the judgment).

Route Four appeals the judgment. It contends the trial court erred by (1) granting summary judgment for Hawthorne defendants, (2) overruling several of its evidentiary objections, and (3) denying its request for a continuance to conduct discovery. We find no errors in the court’s ruling.

## DISCUSSION

## I.

### REVIEW STANDARD

Summary judgment provides “‘courts with a mechanism to cut through the parties’ pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.’ [Citation.] A defendant moving for summary judgment must show the plaintiff’s causes of action have no merit. It may do so by negating an element of a cause of action or showing it has a complete defense to a cause of action. The burden then shifts to the plaintiff to show a triable issue of material fact as to the cause of action or defense.” (*Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 182.)

Courts grant summary judgment “if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence . . . .” (Code Civ. Proc., § 437c, subd. (c).)

Summary judgment rulings are reviewed de novo. (*Ghazarian v. Magellan Health, Inc., supra*, 53 Cal.App.5th at p. 182.) Even with de novo review, however, the trial court's ruling is presumed correct, and "'"'"the appellant has the burden of showing error.'"'"' (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.) "[T]he appellant must frame the issues for us, show us where the superior court erred, and provide us with the proper citations to the record and case law. "'"[D]e novo review does not obligate us to cull the record for the benefit of the appellant. . . . As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . by citation to the record and any supporting authority.'"'"' (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.)

## II.

### THE SUMMARY JUDGMENT RULING

#### A. *Intentional Interference with Contract Elements*

Route Four's only claim against Hawthorne defendants was for intentional interference with contract. To prevail on this claim, "a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

Further, to establish an intentional interference with contract claim, the plaintiff must show the defendant's actions caused the alleged breach or disruption. (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 391.) "'It has been repeatedly held that a plaintiff, seeking

11

to hold one liable for unjustifiably inducing another to breach a contract [or disrupt a contract], must allege [and prove] that the contract *would otherwise have been performed*.'" (*Hahn v. Diaz-Barba (*2011) 194 Cal.App.4th 1177, 1196, first brackets added.) "The logic behind this requirement is obvious: it prevents the plaintiff from obtaining a 'windfall' in the form of damages for interference with an economic opportunity which it would not have obtained even if the defendant had done nothing wrong." (*Technology for Energy Corp. v. Scandpower, A/S* (6th Cir. 1989) 880 F.2d 875, 877 [applying California law].)

*B. Analysis*

The trial court found Route Four's claim failed as a matter of law because the undisputed facts showed Hawthorne defendants did not cause the alleged contractual disruptions. We find no error in this ruling.

We begin by discussing *Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990 (*Dryden*), which the trial court relied on and was heavily discussed in both parties' appellate briefs. In *Dryden*, the plaintiffs contracted with the owners of an olive oil processing plant to buy certain products. Several years later, the owners informed the plaintiffs that they intended to rescind and cancel this contract. The plaintiffs filed an action against the owners for relief. While this action was pending, the owners sold the processing plant to the defendant. (*Id.* at p. 993.) The plaintiffs then sued the defendant for intentional interference with contract, claiming the defendant's purchase of the plant interfered with their contract with the owners. (*Id.* at pp. 993–995.) The court sustained the defendant's demurrer to the complaint, and the plaintiffs appealed. (*Id.* at p. 993.)

The appellate court affirmed, finding the plaintiffs' claim lacked causation. (*Dryden*, *supra*, 65 Cal.App.3d at pp. 997–999.) To prove a claim

12

for intentional interference with contract, a plaintiff must show "the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof." (*Id*. at p. 997.) The appellate court reasoned, the allegations underlying the intentional interference claim "conclusively demonstrate[d] that the performance of the disputed contracts had been abandoned and discontinued by the [owners] many months prior to the transfer of the plant to [the defendant]. Under these circumstances, proximate causation, a vital element of the cause of action [citation], was lacking as a matter of law." (*Id*. at pp. 997–998.)

Like *Dryden*, Route Four has failed to show Hawthorne defendants' purchase of the Luxx brand interfered with its performance of the alleged customer contracts. As detailed below, Route Four's amended complaint asserted that Hawthorne defendants' purchase of the Luxx brand *in 2021* interfered with Route Four's ability to sell Luxx brand products to its customers. But the amended complaint also conceded that Route Four had been unable to sell Luxx brand products *since 2019*, when Burkhart and Luxx Lighting, Inc. stopped providing Route Four with Luxx brand products. In short, Hawthorne defendants did not cause the contractual disruptions underlying Route Four's claim. Those disruptions occurred years before Hawthorne defendants bought the Luxx brand.

In the amended complaint, Route Four claimed all defendants had disrupted its customer contracts. Specifically, the amended complaint alleged that "[Route Four] *had contracts with various clients* . . . for the sale of various products. Defendants Burkhart, Canop Holdings, Rails, [Luxx Lighting, Inc.], Athena, [and Hawthorne defendants] were 'strangers' to these contracts . . . . Defendants were aware of those contracts and their value, as

13

the contracts included the sale of Luxx [brand] and/or Athena products. Thereafter, Defendants . . . intentionally interfered with the contractual relationship *between* [*Route Four*] *and those clients* by communicating with [Route Four's] clients, by offering to beat [Route Four's] prices by selling the Luxx [brand] and Athena products directly and/or by selling and purchasing Luxx [brand] and Athena [products] . . . ." (Italics added.)

Following this preface, the amended complaint pled four specific contractual disruptions caused by all defendants. As discussed above, the first three disruptions concerned Luxx Lighting, Inc.'s alleged poaching of Route Four's customers. The fourth alleged disruption concerned Hawthorne defendants: "On December 30, 2021, . . . Defendants Burkhart and [Luxx Lighting, Inc.] entered into an asset purchase agreement with [Hawthorne defendants] whereby [Hawthorne defendants] purchased the assets of [Luxx Lighting, Inc.] from Defendant Burkhart for $213.5 million. As a result of the [2021 Luxx sale], [Route Four] *was no longer able to sell, distribute and/or supply Luxx* [*brand*] *products to its clients and Customers*." (Italics added.)

Route Four then alleged that the above four disruptions "resulted in [Route Four] being unable to perform under the *contracts with third party clients* without incurring more costs and ultimately losing money in the sales. Defendants intended to disrupt [Route Four's] performance of its contracts, and/or Defendants knew that their conduct was substantially certain to disrupt [Route Four's] performance of its contracts." (Italics added.)

In sum, Route Four claimed Hawthorne defendants had interfered with its customer contracts by purchasing the Luxx brand in 2021, making it unable to supply Luxx brand products to its customers. But this theory is undermined by other allegations in the amended complaint, which concede Route Four had been unable to sell Luxx brand products prior to the

2021 Luxx sale. For example, the amended complaint alleged that Burkhart and Canop had "refused to sell Luxx [brand] and Athena products to Route Four *since approximately November 2019.*" (Italics added.) Specifically, in November 2019, Burkhart instructed Luxx Lighting, Inc. "to cease all sales of their products to Route Four. . . . As a result, Route Four is no longer able to sell Luxx [brand] or Athena products to its customers, thereby disrupting Route Four's ability to conduct its business."

Hawthorne defendants' purchase of the Luxx brand in 2021 did not render Route Four unable to sell Luxx brand products. Rather, Route Four had been unable to sell such products prior to the 2021 Luxx sale because Burkhart and Luxx refused to sell them to Route Four. And nothing in the record suggests their refusal to sell Luxx brand products to Route Four was temporary. Put differently, Route Four would not have been able to provide its customers with Luxx brand products even if Hawthorne defendants had not purchased the Luxx brand in 2021. Thus, the amended complaint shows Hawthorne defendants' purchase of the Luxx brand did not cause any disruptions to Route Four's customer contracts. (*Hahn v. Diaz-Barba*, *supra*, 194 Cal.App.4th at p. 1196; *Dryden*, *supra*, 65 Cal.App.3d at pp. 997–998.)

Route Four cannot avoid the amended complaint's allegations. "The complaint limits the issues to be addressed at the motion for summary judgment. The rationale is clear: It is the allegations in the complaint to which the summary judgment motion must respond. [Citation.] Upon a motion for summary judgment, amendments to the pleadings are readily allowed. [Citation.] If plaintiff wishes to expand the issues presented, it is incumbent on plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself."

15

(*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258.) Likewise, "'"[a] defendant moving for summary judgment may rely on the allegations contained in the plaintiff's complaint, which constitute judicial admissions. As such they are conclusive concessions of the truth of a matter and have the effect of removing it from the issues.'" [Citation.] The admissions may not be contradicted in opposing summary judgment." (*Mark Tanner Construction, Inc. v. Hub Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 586–587.)

Moreover, we note that Route Four's discovery responses also conceded that "Beginning in November 2019, [Luxx Lighting, Inc.] and Athena ceased all sales of their products to Route Four and, as a result, Route Four was no longer capable of selling Luxx [brand] or Athena products to its customers."

Based on the amended complaint's allegations and its discovery responses, Route Four had been unable to provide Luxx Brand products to its customers prior to Hawthorne defendants' purchase of the Luxx brand in 2021. The Hawthorne defendants' purchase of the Luxx Brand did not cause any disruptions to Route Four's customer contracts. Because Route Four cannot establish causation, its intentional interference claim against Hawthorne defendants fails as a matter of law.

III.

ROUTE FOUR'S ARGUMENTS

*A. The Noncompetition Provision*

On appeal, Route Four asserts a new theory of disruption. It contends Hawthorne defendants interfered with the 2018 Hydroponics agreement by causing Burkhart and Canop to breach the noncompetition provision. Route Four has not explained where this theory is alleged in the amended complaint. Though we are not obligated to scour the record on

16

Route Four's behalf (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277), our independent review of the amended complaint shows no such theory was asserted against Hawthorne defendants. Rather, as detailed above, the amended complaint asserted Hawthorne defendants had interfered with contracts between *Route Four and its customers* by preventing it from selling Luxx brand products. Route Four cannot rely on a new theory of liability on appeal.[4] (*Laabs v. City of Victorville, supra*, 163 Cal.App.4th at p. 1258.)

## B. *Purported Factual Disputes*

Next, Route Four argues there are questions of fact concerning the trial court's finding that it was incapable of selling Luxx brand products as of November 2019. We disagree.

Route Four asserts, "[t]he only evidence supporting this purported material fact was a single sentence contained in Route Four's response to a single interrogatory." Not so. Route Four admitted to being unable to sell Luxx brand products as of November 2019 in multiple discovery responses. Specifically, Route Four's discovery responses claimed, "Beginning in November 2019, [Luxx Lighting, Inc.] . . . ceased all sales of their products to Route Four and, as a result, Route Four was no longer

---

[4] Route Four claims the noncompetition provision created a continuing contractual obligation. It cites *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.* (2019) 36 Cal.App.5th 766, for the proposition that successive causes of action for intentional interference with contract can arise from different breaches of a continuing contractual obligation. Thus, it claims Hawthorne defendants are liable for inducing Burkhart and Canop to breach the noncompetition provision after the 2021 Luxx sale. We need not address this case, since the amended complaint did not assert a theory of liability against Hawthorne defendants based on the noncompetition provision.

capable of selling Luxx [brand] or Athena products to its customers." Route Four provided this same response to at least six different interrogatories: (1) three propounded by Hawthorne Hydroponics (responses to special interrogatory numbers 4, 5, and 11); and (2) three propounded by Hawthorne Collective (responses to special interrogatory numbers 4, 5, and 11). It also made this concession in the amended complaint, which it cannot now contradict. (*Mark Tanner Construction, Inc. v. Hub Internat. Ins. Services, Inc., supra*, 224 Cal.App.4th at pp. 586–587.)

Route Four also points to evidence indicating that it purchased a "substantial supply" of Luxx brand lights in 2018, which is apparently meant to show that Route Four could continue selling Luxx brand lights after November 2019. But just because Route Four purchased a substantial supply of lights in 2018, that does not mean it was capable of selling Luxx brand lights after November 2019. It has not cited any evidence showing it could have continued selling Luxx brand lights after November 2019. And Route Four admitted several times in its discovery responses that it "was no longer capable of selling Luxx [brand] . . . products to its customers" after Luxx Lighting, Inc. stopped selling it products in November 2019.

Route Four also asserts the evidence concerning its purchase of a "substantial supply" of Luxx brand products in 2018, raises questions of fact about its "right to distribute Luxx [brand] . . . products in California and

Washington for five years" under the noncompetition clause.[5] As set forth above, this theory was not raised in the amended complaint and cannot be asserted on appeal. (*Laabs v. City of Victorville, supra,* 163 Cal.App.4th at p. 1258.)

## C. *Evidentiary Objections and Continuance Request*

Because we find the trial court properly granted summary judgment due to lack of causation, we do not address the merits of Route Four's arguments concerning its evidentiary objections and its continuance request. As to the arguments that the court erred by failing to sustain certain evidentiary objections, Route Four has not explained how any of these purported errors affected the court's causation analysis. (See *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449.) Likewise, Route Four has failed to explain how any of the discovery it sought to take could have helped it show causation. (See *Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 643.) It was Route Four's burden to make these connections, and we will not do it for them. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

---

[5] Route Four cites other factual disputes, but it is unclear how these disputed facts relate to causation. Route Four also appears to claim that summary judgment must be denied if *any* fact raised in a separate statement is disputed. (Citing *Insalaco v. Hope Lutheran Church of West Contra Costa County* (2020) 49 Cal.App.5th 506, 521.) Route Four reads *Insalaco* too broadly. In *Insalaco*, the facts at issue were material to the theory upon which the trial court granted summary judgment. (*Id.* at pp. 520–522.) Here, summary judgment was granted based on lack of causation. We need not review factual disputes that are unrelated to this issue. (See *Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 773.)

## DISPOSITION

The judgment is affirmed. Hawthorne defendants are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.